97 F.3d 1458
 Pens. Plan Guide P 23928R
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 
 Austin ALLRED; Kevin M. Birmingham; William F. Carmichael;
Richard Garber; George G. Edwards; John P.
Long; Howard C. Rogers, Plaintiffs-Appellants,
v.
FIRST NATIONWIDE FINANCIAL CORPORATION; First Nationwide
Bank; First Nationwide Financial Corporation
Retirement Plan, a Pension Plan,
Defendants-Appellees.
 No. 94-16805.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 14, 1996.
Decided Sept. 27, 1996.
 Before: ALARCON, LEAVY and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 The case involves whether adequate notice was given of ERISA plan amendments required by changes in tax laws and regulations, and whether a plan amendment was effective by its terms.
 
 FACTS
 
 3
 Appellants are former employees of First Nationwide Bank who participated in the First Nationwide Financial Corporation Retirement Plan. The bank is a participating employer of the pension plan which is administered by First Nationwide Financial Corporation, the plan sponsor ("corporation"). The plan operates on a plan year beginning July 1 and ending June 30. Prior to 1986, benefits accrued according to the "plan formula": the monthly benefit on retirement was 32% of the participant's "Final Average Pay" plus 28% of the difference between the "Final Average Pay" and "Social Security Covered Compensation."
 
 
 4
 In 1986, Congress passed the Tax Reform Act of 1986. It reduced the degree of disparity allowed between benefits paid to highly-compensated versus lower paid employees. The act required plans, such as the First Nationwide plan, to amend benefit formulas with a degree of disparity exceeding that allowed under the act, in order to retain the tax advantages they had as qualified pension plans. The act required the plan to adopt a "subsequent TRA 86 amendment" making benefit accrual as of July 1, 1989 comply with the act's requirements. As appellants analyze the deadline for this plan amendment, it was June 30, 1989.[1] See 26 U.S.C. § 401(b); 26 C.F.R. § 1.401(b)-1.
 
 
 5
 Under 26 U.S.C. § 401(1)(5)(F), the Secretary of Treasury was to prescribe regulations to implement the act. By late 1988, the IRS had not yet issued regulations explaining the provisions of the new laws.[2] 26 U.S.C. § 401(a)(4) and (1)(5)(F)(i).
 
 
 6
 On December 27, 1988, in Notice 88-131, the IRS warned that although regulations allowed an extended remedial amendment period to make the subsequent TRA 86 amendment, these regulations did not permit plan sponsors to violate 26 U.S.C. § 411(d)(6). Under 26 U.S.C. § 411(d)(6), a plan amendment may not decrease benefits accrued before the amendment. Notice 88-131 provided relief to plan sponsors by allowing them to amend plans after June 30, 1989, even though the amendments would modify benefit accrual levels beginning July 1, 1989. Notice 88-131 prescribed various model amendments, which employers could adopt on an interim basis to avoid the section 411 prohibition. Notice 88-131, § II.
 
 
 7
 Model Amendment 3 limited subsequent benefit accruals of all participants to what subsequent amendments to conform to subsequent regulations might allow. "This provision shall be effective until the last day of the first plan year commencing in 1989 [June 30, 1990] and shall be effective for such period if and only if the subsequent TRA '86 amendment is made on or before the last day of the first plan year commencing in 1989 [June 30, 1990]." Notice 88-131, § II(C)(3).
 
 
 8
 The IRS notice also stated that model amendment 3 is "not subject to the notice requirements of section 204(h) of [ERISA]," though the subsequent TRA '86 amendment may require section 204(h) notice. Notice 88-131, § V.
 
 
 9
 On June 30, 1989, the bank adopted model amendment 3 as plan section 4.11. This was an interim amendment, and the IRS had said that this amendment was not subject to the ERISA notice requirement. The effective date of section 4.11 was July 1, 1989, and, in accord with model amendment 3, provided that the section would be effective until June 30, 1990 "if and only if" the subsequent TRA 86 amendment were made by then. With employees' July 15, 1989 paycheck, the bank notified employees that changes in the plan were contemplated. The notice informed employees that the benefit formula would be revised, and, "[w]hen the formula is approved, it will be effective retroactive to July 1, 1989."
 
 
 10
 In December of 1989, the IRS issued Revenue Procedure 89-65, "extend[ing] the application of Model Amendment 3 ... to allow plan sponsors to continue the suspension of benefit accruals for all participants beyond [June 30, 1990]." IRS Rev.Proc. 89-65. Revenue Procedure 89-65 extended the "treatment afforded to plan sponsors that adopt Model 3" to June 30, 1991. IRS Rev.Proc. 89-65, § 4.02(1) At this time, the remedial amendment period for the subsequent TRA 86 amendment extended to June 30, 1992. Revenue Procedure 89-95 further provided that suspension of benefit accruals under Model 3 could continue past June 30, 1991 to the end of the remedial amendment period provided "the notice described in section 204(h) of [ERISA] is provided no later than [June 30, 1991]." IRS Rev.Proc. 89-95, § 4.02(2). Therefore the suspension of benefit accruals could extend to June 30, 1992, provided participants received notice prior to June 30, 1991.
 
 
 11
 In the fall of each year, the bank customarily distributed information to employees about "open enrollment" in the bank's benefit plans. Fall 1990 information included the statement that "[a]s of June 30, 1989, contributions to [the retirement benefit] plan were frozen pending plan design changes, which will be announced in mid-1991." The October 1990 bank newsletter stated:
 
 
 12
 Retirement benefits are paid in full by First Nationwide. As of June 30, 1989 contributions to our retirement benefit plan were frozen pending plan design changes.
 
 
 13
 Once the plan is redesigned, we will calculate pension benefits retroactive to July 1, 1989. Then benefit statements, including pension information, will be distributed. This process--which involves lengthy comparative analyses, filing plan documents and integration into our total compensation program--should be finished by the second quarter of 1991.
 
 
 14
 Until then, on an ad hoc basis, employees who require such information can request their pension estimates as of June 30, 1989, by writing to the corporate benefits department....
 
 
 15
 In November of 1990, the IRS extended the remedial amendment period to June 30, 1993, thus simultaneously extending the time for permissible suspension of benefit accruals. Notice 90-73. In notice 90-73, the IRS reminded plan sponsors, that "the suspension of benefit accruals [past June 30, 1991] ... under Model 3 is conditioned upon providing the notice described in section 204(h) of [ERISA] no later than [June 30, 1991]." Notice 90-73, § II(4). The IRS later extended the remedial amendment period, and thus the permissible suspension of benefit accruals, to June 30, 1995 in Notice 92-36.
 
 
 16
 On August 28, 1991, the corporation's board of directors adopted a resolution to amend the plan from a final average pay benefit formula to a cash balance benefit formula. This was designed to bring the plan into conformity with the regulations the IRS had by then proposed.
 
 
 17
 In November of 1991, the bank conducted an employee communications program to inform plan participants about the change in the plan's benefit formula. Fliers were distributed to inform employees of the informational meetings. At the meetings, bank officers conducted discussions about the changes, with literature and videos, including a "Retirement Program" booklet explaining the change, including that the revision retroactively applied to July 1, 1989. In November, the bank also sent a benefits statement to employees, including each plaintiff, detailing their personal benefit calculation.
 
 
 18
 Appellants retired or were terminated from employment with the bank between September 1991 and May 1992. To determine each appellants' monthly pension, the bank first calculated his monthly pension benefit as of June 30, 1989. The bank then calculated his monthly pension benefit under the new formula as of the date of retirement or termination. If the new formula yielded a lower pension benefit, the appellant received the higher amount, because the bank cannot reduce a benefit already accrued as of June 30, 1989. Each appellant received a monthly pension benefit calculated under the old formula based on his service as of June 30, 1989. As a result, each appellant's final monthly pension benefits were capped by what they were entitled to as of June 30, 1989, even if, had the plan not been amended, he would have accrued higher benefits by continuing to work past that date.
 
 
 19
 Appellants sought an injunction under 29 U.S.C. §§ 1132(a)(3) and (a)(1)(B) to compel appellees to pay pension benefits as calculated under the old formula through the date of retirement or termination. The district court held in favor of appellees.
 
 ANALYSIS
 
 20
 We review the district court's grant of summary judgment de novo. Jesinger v. Nevada Federal Credit Union, 24 F.3d 1127, 1130 (9th Cir.1994). We may affirm on any ground supported by the record. First Pacific Bank v. Gilleran, 40 F.3d 1023, 1024 (9th Cir.1994).
 
 
 21
 I. Whether Plan section 4.11 is "Ineffective".
 
 
 22
 Appellants argue that interim plan section 4.11, copied from IRS model amendment 3 and adopted June 30, 1989, is ineffective. If the section was effective, then benefits were frozen June 30, 1989, so the subsequent amendment did not retroactively cut them. But if this interim amendment was not effective, then the subsequent amendment retroactively cut benefits, so was void. ERISA § 204(g) prohibits the adoption of plan amendments which reduce the benefit that a participant has already accrued. 29 U.S.C. § 1054(g).
 
 
 23
 A. Whether § 4.11 expired by its own terms.
 
 
 24
 Appellants first argue that § 4.11 expired by its own terms on June 30, 1990. This argument is based on language in section 4.11 saying "This provision shall be effective until the last day of the first plan year commencing in 1989 and shall be effective for such period if and only if the subsequent TRA 86 amendment is made on or before the last day of the first plan year commencing in 1989." The problem appellants point to is that the final amendment was not made before June 30, 1990. Section 4.11 stated that it would be effective until June 30, 1990 only if the subsequent TRA 86 amendment were made by then.
 
 
 25
 The IRS has authority to issue regulations, rulings, and opinions relating to ERISA § 204. 5 U.S.C. § 903; Reorg. Plan No. 4 of 1978, 43 Fed.Reg. 47713 (October 17, 1978). The IRS also has authority to prescribe regulations to implement the Tax Reform Act of 1986. 26 U.S.C. § 401(l)(5)(F). IRS regulations prescribed under 26 U.S.C. § 411 apply to the minimum vesting standards in ERISA § 204. 29 U.S.C. § 1202(c). IRS Revenue Rulings are not binding on the courts, but should be given considerable weight when explicating the IRS's authority to implement a congressional mandate. Certified Stainless Serv., Inc. v. United States, 736 F.2d 1383, 1386 (9th Cir.1984). "[C]onsiderable weight should be accorded to an [agency's] construction of a statutory scheme it is entrusted to administer." Chevron, U.S.A., Inc. v. Natural Resources Defense Council, 467 U.S. 837, 844 (1984).
 
 
 26
 Plan § 4.11 is an exact copy of IRS model amendment 3, set forth in IRS Notice 88-131. The IRS extended the time allowed for an adoption of amendments under model amendment 3, past June 30, 1990. The IRS also stated that the language of model amendment 3 would be treated as having been revised to extend the deadline. Rev.Proc. 89-65, § 4.02(7).
 
 
 27
 Appellants argue that the IRS lacks the power to amend an ERISA plan. But we must recognize the degree to which these plans are tax-driven, and the practical necessity for a plan administrator of conforming the plan to IRS requirements. But for the tax advantages of employer-provided retirement plans, people would prefer cash from their employers to the employers' contributions into retirement plans, and the retirement plans probably would not exist.
 
 
 28
 The IRS regulations were late, and difficult to comprehend and apply. The plan administrator did just what the IRS said to do, using its model form. The IRS determined that a plan amendment saying what this one did was effective past the cutoff date stated in it, because of the need to wait on IRS adoption of further regulations. In the face of the IRS construction extending the cutoff date for amendments, the practical impossibility of adopting the final amendments until the IRS said what they should be, and the IRS interpretation of ERISA requirements, it is appropriate in this tax-driven area of law to treat the interim model amendment as effective until the subsequent date.
 
 
 29
 B. Whether § 4.11 expired from lack of notice.
 
 
 30
 Appellants alternatively argue that plan § 4.11 expired, because the bank did not notify plan participants that they had adopted it. Under ERISA § 204(h), a plan "may not be amended so as to provide for a significant reduction in the rate of future benefit accrual unless" participants are given written notice "setting forth the plan amendment" at least 15 days before the effective date of the amendment.
 
 
 31
 IRS Notice 88-131 specifically states that model amendment 3 is "not subject to the notice requirements of section 204(h) of ERISA." IRS regulations state that IRS notices have the authority to provide that section 204(h) notice need not be provided for plan amendments. 26 C.F.R. § 1.411(d)-6T (A-4).
 
 
 32
 Appellants argue, however, that ERISA § 204(h) specifically states that plans may not be "amended without notice." Under Ann Jackson Family Foundation v. C.I.R., 15 F.3d 917, 920 (9th Cir.1993), a tax regulation is not a reasonable statutory interpretation unless it "harmonizes with the plain language of the statute."
 
 
 33
 There are two reasons why the interim amendment does not fail for lack of notice. First, it did not reduce benefits. Second, the IRS said no notice was necessary.
 
 
 34
 The interim amendment said that participants shall "accrue no additional benefit ... to the extent that such additional benefit accrual exceeds the benefit which would otherwise accrue in accordance with the terms of the plan as subsequently amended to comply with those qualification requirements described in Income Tax Regulations section 1.401(b)-1(b)(2)(ii) (TRA '86)." This difficult language was copied verbatim from the model form the IRS provided for plan administrators. The regulation which this amendment says plan administrators were supposed to conform their plans to had not been promulgated when the IRS prescribed this form or when the Plan adopted it. It came down a year later, and was amended into final form four years after the interim amendment. Applying the abstract language of the IRS form to the concrete facts, the interim amendment said that plan participants would accrue no additional benefits to the extent that additional benefits exceeded what would be allowed under subsequent amendments to the plan, not yet adopted, which would conform the plan to subsequent tax regulations, not yet adopted.
 
 
 35
 Thus the interim amendment did not reduce benefit accruals. Instead, accruals were thrown into an entirely uncertain posture, awaiting IRS regulations. Therefore the statute requiring notice of a reduction in future benefits did not require notice. No one could tell whether there was any future reduction until the IRS subsequently promulgated regulations.
 
 
 36
 Second, our decision in Ann Jackson Family Foundation is distinguishable. There, a regulation left over from an earlier version of the tax statute was not revised to conform to an amendment in the statute. The taxpayer was disadvantaged by enforcement of a regulation which the IRS lacked authority to make, after the statute was amended. "[T]he Secretary may not usurp the authority of Congress by adding restrictions to a statute which are not there." Id. at 920 (citation omitted). Ann Jackson Family Foundation was unlike the case at bar, where an ERISA plan followed the IRS prescriptions, and a third party claimed that the plan violated the statute to which the IRS said its conduct would conform.
 
 
 37
 ERISA said notice had to be given only for a reduction, but the interim amendment did not effect a reduction, just uncertainty. More precisely, ERISA § 204(h) only applies to amendments which "provide for a significant reduction in the rate of future benefit accrual." 29 U.S.C. § 1054(h). "[A]n amendment affects the rate of future benefit accrual only if it is reasonably expected to change the amount of the future annual benefit commencing at normal retirement age." See 26 C.F.R. § 1.411(d)-6T (A-5). In this ambiguous and unpredictable situation, a plan administrator was entitled to follow the IRS interpretation of whether its own model interim plan amendment required notice under ERISA. See 26 C.F.R. § 1.411(d)-6T (A-10); Anderson v. Resolution Trust Corp., 66 F.3d 956, 959 (8th Cir.1995) (notice of adoption of model amendment 3 not required where suspension of accruals did not continue past the end of the 1990 plan year).
 
 
 38
 C. Whether § 4.11 notice sufficed after the required date.
 
 
 39
 Appellants next argue that § 4.11 fails, because the bank failed to provide notice by June 30, 1991. The interim amendment required notice if the final plan amendment had not been adopted by that date. IRS Revenue Procedure 89-65 extends treatment of model amendment 3 to June 30, 1992, but extensions past June 30, 1991 are conditioned upon "the notice described in section 204(h) of [ERISA being] provided no later than [June 30, 1991]." Rev.Proc. 89-65, § 4.02(2). This procedure requires such notice "if a defined benefit plan ... is amended to provide for a significant reduction in the rate of future benefit accruals." Id. Appellants claim that the bank did not provide ERISA § 204(h) notice by June 30, 1991, so § 4.11 expired on that date.
 
 
 40
 The bank notified employees about the change in benefit formulas several times. The question is whether such notices satisfy the requirements of Revenue Procedure 89-65, which requires "notice described in section 204(h)" of ERISA. ERISA § 204(h) requires "a written notice, setting forth the plan amendment and its effective date." Appellants argue that ERISA § 204(h) requires an exact reproduction of the plan amendment resulting in § 4.11. IRS regulations explicitly reject that argument:
 
 
 41
 [N]otice does not fail to comply with section 204(h) of ERISA merely because the notice contains a summary of the amendment, rather than the text of the amendment, if the summary is written in a manner calculated to be understood by the average plan participant and contains the effective date. The summary need not explain how the individual benefit of each participant or alternate payee will be affected by the amendment.
 
 
 42
 60 Fed.Reg. 64320, 64323.
 
 
 43
 The bank gave participants notice of the amendment on July 15, 1989. The notice makes it clear that the bank does not know yet what the changes will be, but whatever they turn out to be, they will be retroactive to July 1, 1989:
 
 
 44
 The second change is a revised benefit formula.... We will announce a new benefit formula as soon as we obtain final approval. When the formula is approved, it will be effective retroactive to July 1, 1989. Special procedures will be followed in the meantime. If a participant retires or terminates, the benefit will be determined in two stages. The initial benefit will be equal to the benefit accrued to June 30, 1989, under the old formula. Later, when the new formula is implemented, the benefit will be recalculated to take into account the new formula and service after June 30, 1989. If the new benefit is larger, there will be a make-up payment and/or an annuity adjustment for the difference between the initial benefit and the recalculated benefit, retroactive to the date of retirement. In no event will your accrued benefit as of June 30, 1989, be reduced on account of this second calculation.
 
 
 45
 This was sufficient to tell the participants that there would be a change, and to disclose its effective date. This accurately summarized model amendment 3, adopted as the interim plan amendment. Under ERISA, the plan had to give notice of what the interim amendment said, and it did. To the extent that the notice clouded participants' knowledge of what the future would hold, that was the fault of the IRS, for being late with its regulations, not the fault of the plan. The notice was sufficient, in these circumstances, under ERISA.
 
 
 46
 II. The August 29, 1991 "Amendment by Resolution."
 
 
 47
 Appellants argue that the district court erred in considering the August 28, 1991 resolution adopted by the corporation's board of directors an amendment of the plan. But the argument affects the outcome only if the interim amendment and notice of it were ineffective or insufficient. Because we hold to the contrary, we do not reach the argument on the August 29, 1991 resolution.
 
 
 48
 The district court's grant of summary judgment is AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Arguably the deadline was June 30, 1990, not 1989, but the argument is not made in the briefs and is immaterial to this case
 
 
 [2]
 In May 1990, the IRS issued proposed regulations over 600 pages long interpreting the requirements of 26 U.S.C. § 401(a)(4) and § 410(b). (55 Fed.Reg. 19887) These proposed regulations were corrected in June, amended in September, and amended in December. Final regulations were issued September, 1991. The final regulations were corrected in February of 1992, and amendments were proposed in January and April of 1993. (58 FR 3876; 58 FR 21412)