United States Court of Appeals,

Eleventh Circuit.

No. 95-3357.

Ben A. SCOTT, Jim Cason, David E. Cook, Plaintiffs-Appellees, Cross-Appellants,

v.

ADMINISTRATIVE COMMITTEE OF THE ALLSTATE AGENTS PENSION PLAN, The Allstate Agents Pension Plan (as a nominal defendant), Wayne E. Hedien, Norbert A. Florek, Louis G. Lower II, Thomas W. Tewksbury, Donald E. Viken, Defendants-Appellants, Cross-Appellees,

Joan Swain, Ian O'Connor, Movants.

June 2, 1997.

Appeals from the United States District Court for the Middle District of Florida. (No. 93-1419-CIV-J-10), Wm. Terrell Hodges, Judge.

Before ANDERSON and CARNES, Circuit Judges, and STROM[*], Senior District Judge.

ANDERSON, Circuit Judge:

This appeal arises from actions taken by defendants[1] to retroactively amend the Allstate Agents Pension Plan ("Plan")[2] in order to comply with the Tax Reform Act of 1986 (TRA '86 or the Act). Plaintiffs brought suit under the Employee Retirement Income Security Act of 1974, as amended (ERISA), claiming that because defendants failed to follow interim Internal Revenue Service (IRS) regulations, the amendments to the Plan were ineffective and therefore could not retroactively reduce benefits accrued after January 1, 1989. After a bench trial, the district court held that because the procedures prescribed in IRS Revenue Procedure 89-65, 1989-2 C.B. 786, were not followed, the amendments at issue were not retroactively effective to January 1, 1989. We disagree and reverse.

---

[*]Honorable Lyle E. Strom, Senior U.S. District Judge for the District of Nebraska, sitting by designation.

[1]Plaintiffs sued the Administrative Committee of the Allstate Agents Pension Plan, the Allstate Agents Pension Plan, and a number of individual defendants. Neither Allstate Insurance Company nor the Pension Committee of Allstate's Board of Directors was a party to this lawsuit.

[2]The Plan is an employee benefit pension plan, sponsored by Allstate Insurance Company, within the meaning of ERISA Section 3(2). The Plan operates on a plan year beginning January 1 and ending on December 31.

## I. FACTS[3]

In 1986, Congress passed the Tax Reform Act of 1986. One of the principal purposes of the Act, with respect to pension plans, was to eliminate perceived discrimination in favor of highly compensated employees. One of the most common instances of the discrimination Congress wanted to eliminate was the social security offset.[4] In order for plan sponsors to retain the tax advantages of being a qualified pension plan, the Act required that plan sponsors amend discriminating benefit formulas to comply with the Act. TRA '86 required that plans have a non-discriminatory benefit formula in place by January 1, 1989. *See* 26 U.S.C. § 401(b). To assist plan sponsors in complying with the Act, 26 U.S.C. § 401(*l*)(5)(F) required the Secretary of the Treasury to issue regulations to guide plan sponsors in amending their plans. By late 1988, however, the IRS had failed to issue any regulations.

To lessen the predicament of plan sponsors awaiting the issuance of final regulations, on December 27, 1988, the IRS issued Notice 88-131, 1988-2 C.B. 546, which provided several alternatives pursuant to which plan sponsors could retain the right to amend their plans retroactively. Specifically, Notice 88-131 gave plan sponsors the opportunity to "preserve their flexibility to modify benefit or contribution levels before benefits begin to accrue in the first plan year beginning after December 31, 1988." *Id.* at § I. In essence, Notice 88-131 gave defendants a means to change benefit accruals retroactive to January 1, 1989, without violating 26 U.S.C. § 411(d)(6), which provides that a plan amendment may not decrease a participant's accrued benefit.

One of the alternatives contained in Notice 88-131 was Model Amendment 3, which provided that a plan, subject to certain time limitations, could suspend post-1988 benefit accruals

---

[3]The following facts are either verbatim restatements of the district court's findings or, on occasion, are paraphrased quotations of those facts.

[4]Benefits are commonly calculated as a percentage of annual salary. The Social Security offset reduced everyone's benefits by the amount of the Social Security benefit. However, because the amount of salary subject to Social Security was limited to approximately $54,000, the Social Security offset necessarily reduced a higher proportion of the pension benefit for low earning employees as compared to employees earning more than $54,000. For example, for an employee earning $54,000, the Social Security offset operates as to *all* of his or her salary, whereas for an employee earning $108,000, the Social Security offset operates as to only one-half.

for plan participants until after the adoption of a benefit formula in compliance with TRA '86.[5] Under Model Amendment 3, plan participants' benefits during the period of suspension would be determined at a later date using the benefit formula adopted by their plan sponsor to comply with TRA '86.[6]

Pursuant to Notice 88-131, Model Amendment 3 was to be "effective until the last day of the first plan year commencing in 1989 [December 31, 1989] and shall be effective for such period if and only if the subsequent TRA '86 amendment is made on or before the last day of the first plan year commencing in 1989 [December 31, 1989]." *Id.* at § II(C)(3). In addition, Notice 88-131 provided that plan sponsors adopting Model Amendment 3 were not subject to the notice requirements of § 204(h) of ERISA, 29 U.S.C. § 1054(h).[7] *Id.* at § V. In other words, no notice of the suspension was required to be given to plan participants.

On March 13, 1989, the Pension Committee of Allstate's Board of Directors timely adopted Model Amendment 3,[8] suspending benefit accruals after December 31, 1988, until the Plan could

_____

[5]Specifically, the Model Amendment 3 in Notice 88-131 provided that a "participant shall accrue no additional benefit under the plan or after [insert the effective date of this model amendment, which shall be no earlier than the date this amendment is adopted] to the extent that such additional benefit accrual exceeds the benefit which would otherwise accrue in accordance with the terms of the plan as subsequently amended to comply with those qualification requirements described in Income Tax Regulations section 1.401(b)-1(b)(2)(ii)(TRA '86)." *Id.* at § II(C)(3).

[6]Although somewhat of a misnomer, the parties and the district court have referred to this as a freeze or suspension of benefit accruals. Actually, benefit accruals after December 31, 1988, were not "frozen" in the sense of total cessation. Rather, benefit accruals would continue pursuant to the new formula to be set out in the subsequent amendments in compliance with the IRS guidelines to be promulgated. The new formula was permitted to be retroactive. As expressed in Notice 88-131: a "participant shall accrue no additional benefit ... to the extent that such additional benefit accrual exceeds the benefit which would otherwise accrue in accordance with the terms of the plan as subsequently amended to comply with ... [regulations under TRA]." *Id.* at § II(C)(3). As a shorthand, we also refer to this process as a suspension of benefit accruals with the understanding that our meaning is as explained.

[7]While Notice 88-131 did not subject plan sponsors adopting Model Amendment 3 to § 204(h)'s notice requirement, it stated that § 204(h) notice "may be required with respect to the subsequent TRA '86 amendment if such subsequent amendments of the plan result in a significant reduction in the rate of the future benefit accruals (determined by disregarding the model amendments)." *Id.* at § V.

[8]Notice 88-131 provided that plan sponsors choosing to adopt Model Amendment 3 were required to do so by March 31, 1989. *Id.* § II(C)(3).

be amended later in compliance with the IRS guidelines. Pursuant to the express provisions of Notice 88-131, no notice of the adoption of Model Amendment 3 was given to Plan participants.

In December of 1989, the IRS issued Revenue Procedure 89-65, which extended the suspension of benefit accruals under Model Amendment 3 until December 31, 1990, and permitted defendants to continue to suspend benefit accruals until December 31,1991, so long as they provided ERISA § 204(h) notice to Plan participants by December 31,1990.[9]

From February 1989 to September 1990, defendants distributed a total of four letters to Plan participants informing them of the impact of TRA '86 on the Plan. The first notice, distributed in February 1989 by defendant Donald E. Viken,[10] notified all Plan participants of certain facts regarding Plan changes related to TRA '86 (February 1989 Notice). The relevant part of the February 1989 Notice stated the following:

> The 1986 Tax law also requires plans that contain a social security offset to modify the way benefits are earned. Unfortunately, even at this late date, the IRS has not published guidelines on how benefits should be calculated. Although the IRS rules have not been issued, we would like to share some important facts with you:
>
> ● Benefits earned in the Pension Plan through December 31, 1988 will not be affected.
>
> ● There will be no gap in Plan participation; pension benefits will continue to earn credit in 1989.
>
> ● Participants retiring or terminating in 1989 and eligible for payment at that time will be paid Plan benefits earned through December 31, 1988. Credits earned between January 1, 1989 and the date of termination will be paid out later in the year, when the new benefit calculations are known.
>
> ● The Plan Office will be unable to provide benefit estimates for retirements after

---

[9]We note that the IRS issued Notice 90-73, 1990-2 C.B. 353, in November of 1990, which extended defendants' remedial amendment period to December 31, 1992, thus allowing further extension of the suspension of benefit accruals through December 31, 1992. Notice 90-73 reminded plan sponsors that "the suspension of benefit accruals for all participants under Model 3 beyond the last day of the 1990 plan year [December 31, 1990] is conditioned upon providing the notice described in section 204(h) ... no later than the last day of the 1990 plan year [December 31, 1990]." *Id.* at § II(4). The IRS again extended the remedial amendment period in Notice 92-36, 1992-2 C.B. 364. The facts in this case, however, do not implicate the IRS extensions of the remedial amendment periods in Notice 90-73 and Notice 92-36.

[10]Viken was the Secretary to the Administrative Committee of the Allstate Agents Pension Plan, was the Plan Administrator under the Plan, and was an officer but not a member of the Board of Directors of Allstate.

January 1, 1989. For employees considering retirement, the Accumulated Benefit shown on the Annual Statement of Benefits can be used for planning purposes.

● The Annual Statement of Benefits due for distribution in April 1989 will provide benefits earned through December 31, 1988. Projected benefits will not be shown.

In December 1989 and April 1990, defendant Thomas W. Tewksbury[11] sent the second and third notices to all Plan participants, both of which (1) referred back to the notice sent prior to it, (2) noted that final regulations implementing TRA '86 still had not been issued by the IRS, and (3) explained certain anticipated Plan changes, including the fact that the Social Security offset would be eliminated.[12] Finally, in September 1990 (September 1990 Notice), defendant Tewksbury sent the fourth notice to all Plan participants, which informed participants (1) that proposed TRA '86 regulations had been issued, (2) that defendants had "made [P]lan changes to comply with these regulations and ha[d] made additional [P]lan changes to support the direction the company is taking," and (3) that meetings would be held during the period of October 22, 1990, through November 1990 to discuss the Plan changes.

On October 26, 1990, the Pension Committee passed a resolution which stated the following:

[T]he officers of Allstate Insurance Company ..., acting on behalf of this Committee, be and they are hereby authorized and directed to amend the Agents Pension Plan (the "Plan"), and the trust agreement forming a part of the Plan (the "Trust"), to provide full vesting after five years of service; to modify the benefit formula for service after 1988 to 2% times eligible annual compensation for each year of credited service; to raise the normal retirement age to 65, to comply with the applicable requirements of the Tax Reform Act of 1986 and Internal Revenue Service rulings and regulations, and to effect such additional changes in the Plan and Trust as they deem necessary or desirable as a result of the provisions of said Act, rulings and regulations; provided that the annual cost to the Company for the Plan and Trust, as so amended, is substantially similar to the level outlined and described to this Committee by the officers.

The evidence presented at trial shows that defendant Viken, the Pension Committee and other company officials clearly believed that the resolution had accomplished, without more, an amendment to the Plan. According to the district court, however, the October 26, 1990, resolution

---

[11]At the time, Tewksbury was the Senior Vice President, Corporate Human Resources, and a member of the Pension and Administrative Committees of the Plan.

[12]In explaining some of the anticipated effects of the final regulations, in both the December 1989 Notice and the April 1990 Notice, Tewksbury stated, *inter alia,* that the pension benefit earned by Plan participants through December 31, 1988, would not be affected, that there would be no gap in plan participation, and that the social security offset would be eliminated.

could not fairly or reasonably be regarded by its terms an amendment.

Following the October 26, 1990, resolution, the Pension Committee amended the Plan to comply with TRA '86 at a meeting of the Pension Committee on November 15, 1991. The November 15, 1991, amendments included some changes that were not mentioned in the October 26, 1990, resolution. The November 15, 1991, amendments, *inter alia,* reduced the benefit accrual rate from 21/2% to 2% of a Plan participant's annual salary, eliminated the social security offset,[13] and increased the normal retirement age from 63 to 65.[14] The effective date of those amendments was stated to be retroactive to January 1, 1989. The district court found that these amendments resulted in significant reduction in benefits.

After a bench trial, the district court made the following conclusions of law: (1) the Plan was not amended until November 15, 1991, because the October 26, 1990, resolution did not effectively amend the Plan; (2) the November 15, 1991, amendments were not retroactive because defendants failed to provide timely ERISA § 204(h) notice as required by Rev. Proc. 89-65; and, (3) the November 15, 1991, amendments did not become effective until fifteen days after the giving of § 204(h) notice by the Plan Administrator of the amendments; the court found the effective date to be April 15, 1992. Based on the above conclusions, the district court granted plaintiffs declaratory relief, and held that the plaintiffs were entitled to have their benefits under the Plan calculated under the pre-amendment formula up until April 15, 1992.

## II. ISSUES

On appeal, the defendants make the following arguments: (1) the October 26, 1990, resolution amended the Plan, and thus ERISA § 204(h) notice was not required under Rev. Proc. 89-

---

[13]A reduction in the benefit accrual rate from 21/2% to 2% and an elimination of the social security offset results in reduced benefits for agents who earn more than the amount subject to social security (which was around $54,000 in 1990), and results in increased benefits for agents earning amounts less than the amount subject to social security. At trial, defendant Viken testified that as a result of these changes, approximately one-third of the 16,000 agents who participated in the Plan would suffer a reduction in their benefits. According to Viken, the breaking point where benefits would be reduced would be for those agents earning more than approximately $60,000 in 1991.

[14]The increase in the retirement age would affect all Plan participants who earned benefits and were younger than 65, regardless of their income.

65 because the Plan was amended before December 31, 1990;  (2) that, even if defendants did not effectively amend the Plan until after December 31, 1990, the amendments nevertheless should be applied retroactively because ERISA § 204(h) notice was given in compliance with Rev. Proc. 89-65;  and, (3) that additional ERISA § 204(h) notice of the final amendments complying with TRA '86 should not be required.[15]

## III. STANDARD OF REVIEW

This Court reviews any conclusions of law *de novo,* but we do not disturb findings of fact unless they are clearly erroneous. *Godfrey v. BellSouth Telecommunications, Inc.,* 89 F.3d 755 (11th Cir.1996).

## IV. ANALYSIS

A. *Whether defendants properly complied with Rev. Proc. 89-65.*

Under Rev. Proc. 89-65,[16] plan sponsors could extend the suspension of benefit accruals under Model Amendment 3 until the last day of the 1990 plan year without providing ERISA § 204(h) notice.  Only if the suspension of Plan participants' benefit accruals continued beyond December 31, 1990, did defendants have to provide § 204(h) notice by December 31, 1990.

1. *Whether the defendants amended the Plan to comply with TRA '86 prior to December 31, 1990.*

Defendants argue that they were not required to give ERISA § 204(h) notice because the October 26, 1990, resolution constituted an amendment to the Plan.[17] We agree with the district court that the language of the Resolution itself indicates that it was not an amendment.  Thus, we need not address the several other grounds contributing to the district court's finding that the October 26, 1990, resolution did not constitute an amendment to the Plan.

2. *Whether defendants provided satisfactory notice of the temporary suspension of the accrual of*

---

[15]Because of our disposition of this case, we need not address the other arguments which defendants raised on appeal, and need not address the plaintiffs' claims on cross-appeal.

[16]Neither of the parties on appeal dispute the district court's assumption that Notice 88-131 and Rev. Proc. 89-65 are binding.

[17]Of course, if the Resolution did constitute an effective amendment of the Plan, then the suspension of benefit accruals would have ceased before the end of 1990, and the § 204(h) notice would not be necessary.

*benefits in compliance with Rev. Proc. 89-65*

Defendants also contend that, even if the Plan was not amended until after December 31, 1990, defendants complied with Rev. Proc. 89-65 because of the four notices sent to Plan participants between February 1989 and September 1990. Defendants argue that because they complied with Rev. Proc. 89-65, the suspension of benefit accruals was extended, and the final amendments complying with TRA '86 are therefore retroactive to January 1, 1989.

Under the law of ERISA, § 204(h) notice is required in order for a plan sponsor to amend a pension plan like the instant one to reduce the rate of future benefit accruals for plan participants. Section 204(h) of ERISA, 29 U.S.C. § 1054(h), in pertinent part, states the following:

> A plan ... may not be amended so as to provide for a significant reduction in the rate of future benefit accrual, unless, after adoption of the plan amendment and not less than 15 days before the effective date of the plan amendment, the plan administrator provides a written notice, setting forth the plan amendment and its effective date.

While Rev. Proc. 89-65 expressly recognized that the timing requirement of ERISA § 204(h) could not be met, it did not address the fact that, in requiring ERISA § 204(h) notice of the extension of the suspension of benefit accruals, the substantive content of a plan sponsor's notice would necessarily differ from the typical ERISA § 204(h) notice.[18]

The district court recognized that the notice contemplated by Rev. Proc. 89-65 could not technically satisfy ERISA § 204(h) notice,[19] and held that "the reference to "the notice described in

---

[18]In requiring § 204(h) notice for plans continuing the suspension of benefit accruals under Model Amendment 3 beyond the last day of the 1990 plan year, which in this case was December 31, 1990, Rev. Proc. 89-65 simply stated the following:

> In general, section 204(h) of ERISA requires that advance notice be given if a defined benefit plan or an individual account plan that is subject to section 302 of ERISA is amended to provide for a significant reduction in the rate of future benefit accruals. A plan sponsor that continues to suspend benefit accruals beyond the end of the 1990 plan year and who provides the 204(h) notice by the end of the 1990 plan year will be deemed to satisfy the requirements of section 204(h) even if such notice is provided after benefit accruals have been suspended under Model 3.

*Id.* at § 4.02(2).

[19]Neither the time restriction (fifteen-days-before-the-effective-date) nor the requirement that the notice include the plan amendment could be satisfied.

section 204(h)' of ERISA could only have meant that notice would be required of the temporary freeze on benefit accruals effected by Model Amendment 3." In applying this interpretation, the district court concluded as a matter of law "that none of the "notices' relied upon by the Defendants and allegedly given between February, 1989, and the Spring of 1991, were sufficient under ERISA because they did not in fact clearly communicate that the annual rate was suspended, or frozen, and/or such "notices' were not given by the Plan Administrator as required by the statute."

We agree with the substance of the district court's interpretation of the kind of notice required under Rev. Proc. 89-65. What was required was notice that there would be a change in the formula for calculating benefit accruals beginning in 1989, and that the new formula would be determined later pursuant to IRS regulations to be issued. In other words, we conclude that defendants were required to give Plan participants notice of the "suspension of benefit accruals," using the shorthand we adopted above. We reject any contention that Rev. Proc. 89-65 required literal compliance with the terms of § 204(h)—i.e., that the notice be given "after adoption of the [P]lan amendment and not less than 15 days before the effective date" and that the notice set forth the Plan amendment. Because the Plan amendment would not have been adopted as of the time the notice was required (the end of 1990), it would be impossible to give the notice *after* adoption of the Plan. Likewise, it would be impossible to set forth the Plan amendment (or even its substance). Similarly, because Rev. Proc. 89-65 contemplated a January 1, 1989, retroactive effective date, it would be impossible to give the notice 15 days before the effective date. We "will not require the impossible." *Normann v. Amphenol Corp.,* 956 F.Supp. 158 (N.D.N.Y.1997).

While we agree with the substance of the district court's interpretation of the kind of notice required, we disagree with the district court's application of this notice requirement to the facts of this case. The IRS Treasury Regulation (hereinafter Treasury Regulation), which interprets ERISA § 204(h) notice in typical situations, 26 C.F.R. § 1.411(d)-6T (1996), sheds light on how precise ERISA § 204(h) notice must be.[20] Treasury Regulation § 1.411(d)-6T expressly rejects the argument

---

[20]We recognize that the district court did not have the benefit of Treas. Reg. § 1.411(d)-6T. It was issued on December 15, 1995, and the district court filed its order on September 15, 1995.

that ERISA § 204(h) notice must contain an exact quotation of the text of the amendment:

> [T]he notice does not fail to comply with section 204(h) of ERISA merely because the notice contains a summary of the amendment, rather than the text of the amendment, if the summary is written in a manner calculated to be understood by the average plan participant and contains the effective date. The summary need not explain how the individual benefit of each participant or alternate payee will be affected by the amendment.

26 C.F.R. § 1.411(d)-6T (1996). Treasury Regulation § 1.411(d)-6T illustrates that, in inquiring into whether a notice satisfies ERISA § 204(h), the focus should be on whether "the average plan participant" is able to understand the information which the plan sponsor is required to communicate. In this case, we must look at whether the four notices sent by defendants informed the average Plan participant that their benefit accruals were temporarily suspended pending adoption of the new formula as above described.

After carefully reviewing the February 1989 Notice, the December 1989 Notice, the April 1990 and the September 1990 Notice, we conclude that the notice requirement was satisfied. We first focus on the February 1989 Notice, which we quote in part again as follows:

> The 1986 Tax law also requires plans that contain a social security offset to modify the way benefits are earned. Unfortunately, even at this late date, the IRS has not published guidelines on how benefits should be calculated. Although the IRS rules have not been issued, we would like to share some important facts with you:
>
> ● Benefits earned in the Pension Plan through December 31, 1988 will not be affected.
>
> ● There will be no gap in Plan participation; pension benefits will continue to earn credit in 1989.
>
> ● Participants retiring or terminating in 1989 and eligible for payment at that time will be paid Plan benefits earned through December 31, 1988. Credits earned between January 1, 1989 and the date of termination will be paid out later in the year, when the new benefit calculations are known.

We refer below to the above-quoted part of the February 1989 Notice as the introductory paragraph and the first through third subparagraphs.

We believe that the February 1989 Notice clearly communicates the following:

(1) If the plan has a Social Security offset, as in the instant case, the new tax law requires a change in the way benefits are earned. This is made clear in the first sentence of the introductory paragraph.

(2) The change will not affect benefits earned through December 31, 1988.  This is made clear in the first subparagraph.

(3) Although there will be a change in the way benefits are earned after December 31, 1988, there will be no gap in participation, but rather pension benefits will continue to earn credit in 1989.  This is made clear in the second subparagraph.

(4) Although pension benefits will continue to earn credit after December 31, 1988, the new method of calculation cannot yet be determined because the IRS has not published its guidelines.  When the IRS guidelines are issued, the new benefit calculation or formula will be determined.  All of this is made clear by the second sentence of the introductory paragraph and the second sentence of the third subparagraph.[21]

We conclude that the average Plan participant would clearly understand that the old benefits accrual formula would apply through December 31, 1988, that thereafter benefits would continue to accrue but that there would be a change in the formula which could not be determined until the IRS published its guidelines.  Thus, the February 1989 Notice clearly communicated precisely the information required by Rev. Proc. 89-65—i.e., that there would be a change in the formula for calculating benefit accruals beginning in 1989, and the new formula would be determined after the IRS issued guidelines.

We also note that the February 1989 Notice was sent by the Plan Administrator,[22] as required by ERISA § 204(h).  For the foregoing reasons, we conclude that defendants gave the required notice to Plan participants before December 31, 1990, in compliance with the manner in which Rev. Proc. 89-65 incorporates § 204(h).  Thus, the Plan amendments ultimately adopted on November

---

[21]The fact that the Plan administrators will not know how to calculate benefit accruals after January 1, 1989, until the IRS issues its guidelines is also apparent from the first sentence of the fourth subparagraph (quoted earlier in this opinion):  "The Plan Office will be unable to provide benefits estimates for retirements after January 1, 1989."

[22]The February 1989 Notice was sent by Viken, who, according to the district court's findings of fact, was the Plan Administrator.  Because the February 1989 Notice by itself satisfied the notice requirement, we need not address the relevance of the fact that the three subsequent notices were not signed by the Plan Administrator.  We therefore find that the district court erred in concluding that the " "notices' were not given by the Plan Administrator as required by the statute [ERISA § 204(h) ]."

15, 1991, could be retroactive to January 1, 1989.[23]

B. *Is a second § 204(h) notice required?*

Having determined that defendants did give satisfactory notice, and having thus determined that the Plan amendments were retroactive, we next address a vague argument made by plaintiffs that a second § 204(h) notice was required at the time of the ultimate amendments on November 15, 1991.[24]

Even if the defendants gave satisfactory notice under Rev. Proc. 89-65, plaintiffs seem to argue that a second notice was required by § 204(h) after the Plan amendments were formally adopted on November 15, 1991, but before the effective date thereof. Plaintiffs go on to argue that no such notice was given until April 15, 1992, and thus that defendants forfeited their right to apply the amendments retroactively.

We reject plaintiffs' argument for several reasons. It is clear that compliance with § 204(h) is simply an impossibility. Section 204(h) requires notice "*after* adoption of the plan amendment and *not less than 15 days before the effective date of the plan amendment.*" (emphasis added). In the context of an amendment which is properly to be applied retroactively, it is obviously impossible to give notice thereof both after the adoption of the amendment and before the effective date thereof. In other words, § 204(h) clearly contemplates prospective amendments, not retroactive amendments. That § 204(h) contemplates only prospective amendments is also supported by the provision's

---

[23]While the Ninth Circuit's unpublished disposition in *Allred v. First Nationwide Financial Corp.,* 97 F.3d 1458 (Table), (9th Cir.1996), does not have precedential authority, we find its reasoning persuasive. In *Allred,* the Ninth Circuit, in affirming the district court's grant of summary judgment, held that an employer gave participants ERISA § 204(h) notice of an extension of Model Amendment 3 when the information contained in the notice "was sufficient to tell the participants that there would be a change, and to disclose its effective date." We also agree with the Ninth Circuit that, "[t]o the extent that the notice clouded participants' knowledge of what the future would hold, that was the fault of the IRS, for being late with its regulations, not the fault of the plan."

[24]Because the district court thought that the November 15, 1991, amendments were not retroactive, it was required to decide when the November 15, 1991, amendments became effective. Because we conclude that the November 15, 1991, amendments were retroactive, and thus were effective as of January 1, 1989, we need not go further. Accordingly, we need not reach plaintiffs' arguments on cross-appeal challenging the district court's finding of an April 15, 1992, effective date. Plaintiffs' arguments are moot in light of our holding.

apparent purpose: to give plan participants "the opportunity to take advantage of an existing benefit before it is lost." *Davidson v. Canteen Corp.,* 957 F.2d 1404, 1407 (7th Cir.1992). In the context of a retroactive amendment, it is obvious that there can be no opportunity to take advantage of an existing benefit before it is lost. Indeed, the purpose of IRS Notice 88-131 and Rev. Proc. 89-65 was to give employers a method to retroactively change the formula for benefit accruals, even if the change caused a significant reduction in benefit accruals and therefore would otherwise have required advance notice under § 204(h).

We believe that the express provisions of Rev. Proc. 89-65 strongly support our conclusion that § 204(h) does not require a second notice after the amendments were formally adopted. The language of Rev. Proc. 89-65, in § 4.02(2), expressly states: "A plan sponsor that continues to suspend benefit accruals beyond the end of the 1990 plan year and who provides the 204(h) notice by the end of the 1990 plan year *will be deemed to satisfy the requirements of § 204(h).*" (emphasis added). Thus, the IRS ruling specifically says that the notice we have already found to be satisfactory "will be deemed to satisfy the requirements of § 204(h)." Nothing in the language of § 204(h) suggests that there should be two notices.

We recognize that in Notice 88-131, which predated Rev. Proc. 89-65, the IRS had stated that no notice was required at that time, but suggested the possibility that the § 204(h) notice may be required upon ultimate adoption of the plan amendment. However, we believe that the most reasonable reading of the IRS rulings is that no second notice is required upon ultimate adoption of the retroactive amendment. Our conclusion is supported by the following factors: the later Rev. Proc. 89-65 expressly requires notice in certain circumstances and then states that such notice "will be deemed to satisfy the requirements of section 204(h);" § 204(h) does not require two notices; and, advance notice makes little sense anyway in the context of a retroactive amendment. This reading finds some additional support in the fact that Rev. Proc. 89-65 specifically requires an additional notice in one circumstance.[25] Having specified the circumstances requiring notice raises

---

[25]Where a participant terminates employment and receives distribution of benefits while the temporary suspension is in effect, such person must be notified that additional benefits may be payable when the ultimate amendment fixes the new formula. *Id.* at § 4.02(4).

an inference that other notices are not required.

Finally, we find comfort in the fact that our interpretation comports with common sense and produces an equitable result in the instant case. Here, every Plan participant was given written notice that there would be changes in the formula for benefit accruals because of the new tax law; that such changes would not affect benefits earned through December 31, 1988, and conversely that benefit accruals after January 1, 1989, would be affected; and, that there would continue to be some benefit accruals after January 1, 1989, but that a new formula for calculating same would not be known until the IRS published guidelines.[26] Thus, although all participants did not know the precise change in the formula,[27] nor the precise difference it would mean with respect to each, they did know that the formula for benefit accruals was to be changed effective January 1, 1989. Indeed, they knew substantially everything that it was possible for defendants to have communicated as of the time that Rev. Proc. 89-65 required the notice to be sent to them (i.e., before December 31, 1990). Moreover, the failure of some participants to have actual advance knowledge of the precise change in the formula or the precise amount by which their own benefit would increase or decrease (as compared to pre-1989) could not have harmed them (in a manner out of harmony with the law) because the change was permitted by law to be retroactive.

## V. CONCLUSION

Because we conclude that the defendants gave satisfactory notice in compliance with the manner in which Rev. Proc. 89-65 incorporates the § 204(h) notice, and because we conclude that a second § 204(h) notice was not required for the November 15, 1991, amendments, we hold that

---

[26]All participants also knew before the end of 1990 that one of the changes would be the elimination of the Social Security offset. Of course, that meant that unless defendants were willing to increase the overall contributions, the elimination of the Social Security offset would result in an increase in contributions for lower paid employees and a decrease in contributions for more highly paid employees. Although we suspect that most of the highly paid employees who experienced reductions would have known the foregoing, we do not suggest that such knowledge was necessary. They were expressly told that there would be a change in the formula for benefit accruals beginning January 1, 1989, thus effectively communicating to them that there could be a reduction.

[27]Those employees who did not attend the meetings scheduled by the defendants would not necessarily have known the precise change in the formula.

the Plan amendments in this case are retroactive to January 1, 1989.  As of January 1, 1989, plaintiffs' pension benefits should be calculated under the benefit formula enacted to comply with TRA '86 by the November 1991 amendments.  Accordingly, this case is reversed and remanded to the district court.

REVERSED and REMANDED.