I.
This appeal concerns the propriety of a default judgment in a replevin action. Because we find no hint the trial court applied an incorrect legal standard, much less abused its discretion, we affirm.
 II. A.
James A. Rush has heretofore been an over-the-road truck driver for North American Van Lines, Inc. On October 7, 1985, at a time when Rush was living in the Preston Community in Kemper County, Mississippi, he purchased from North American a 1986 International Harvester tractor for $60,195.00. Rush paid $2,000.00 down and gave North American his promissory note providing that the balance be paid in weekly installments.
Via a written security agreement, Rush granted to North American a purchase money security interest in the IHC tractor to secure performance of his obligations in the premises, principal of which, of course, was making the weekly time payments of $320.44 each. The security agreement provided that, in the event of Rush's default, North American "shall become entitled to possession and control" of the collateral. Rush granted to North American "a license to enter upon the premises of debtor [Rush] at any reasonable time . . . for purposes of repossession or removal." In the event of default, the agreement provided that North American "shall have all of the rights and remedies permitted . . . [by law] and as authorized under this agreement, . . . ."
It appears Rush made his weekly payments until June of 1988 and thereafter fell into default. Acting under the acceleration clause in the note, North American declared the entire unpaid balance due and calculated this sum at $30,619.67. Rush does not contest the accuracy of this calculation. North American sought but failed at a private repossession of the tractor.
 B.
On November 22, 1988, North American commenced the present civil action by filing its complaint in the Circuit Court of *Page 1207 
Kemper County, Mississippi, naming as defendants James A. Rush, Arthur Rush, and Ruth Rush. The complaint stated a garden-variety replevin action and alleged the Rushes held the property at a site known as Rush Circle 336A, also referred to as Route 2, Box 336, Preston, Mississippi, and that North American was entitled to the immediate possession of the property, only that the Rushes wrongfully detailed it.
It appears Arthur Rush and Ruth Rush are husband and wife who live on the Kemper County premises. We assume they are among the kin of James A. Rush, but their exact relationship does not appear.
The record reflects personal service of process on Arthur Rush and Ruth Rush on November 23, 1988. In the promissory note and security agreement James Rush executed on October 7, 1985, he designated Rush Circle 336A, Preston, Mississippi, as his residence, as well. By the time of North American's replevin action, James Rush had left Mississippi and was living in Benton Harbor, Michigan. The record reflects process upon James Rush as a nonresident and includes a return receipt signed personally by James Rush on December 13, 1988, acknowledging receipt of process. See Rule 4(c)(5), Miss.R.Civ.P.
In any event, on November 22, 1988, the Circuit Court entered an order directing that the sheriff seize the IHC tractor. North American posted a replevin bond on which Safeco Insurance Company of America served as surety, the principal amount of said bond being in some $72,000.00, double the value of the property. In due course, the sheriff executed the writ of replevin and seized the IHC tractor.
Process for James A. Rush, Arthur Rush and Ruth Rush was initially made returnable for December 22, 1988. That hearing was continued, and, on March 21, 1989, the Circuit Court ordered that the matter be set for April 25, 1989. Of consequence, the Court ordered that the Rushes plead or otherwise respond on or before April 5, 1989 — a gratuitous enlargement of time of some 104 days. Up until this point, none of the three Defendants had appeared or pleaded, nor had any attorney appeared on their behalf. The order setting the cause for hearing provides, "The Clerk shall mail a copy of this order to all defendants." The docket of the Court, appearing as a part of the Record Excerpts here, contains the notation under date of "3/21/89," "Copy Mailed to Defendant."
April 5, 1989 came and passed and no Rush had appeared or made any filing, nor was any appearance or filing made over the next nineteen days. But, when the Court called the matter at 9:00 o'clock on April 25, 1989, Laurel G. Weir, an attorney of Philadelphia, Mississippi, appeared personally and announced to the Court that the Rushes had been represented by a lawyer in Meridian but that lawyer could not be present that day because he had a case set in Laurel, Mississippi. Weir stated, "I had a Court set at Tupelo but I decided I would come by here. I would have time to at least state our position to the Court." Weir then presented a hastily drawn motion to dismiss or, in the alternative, for a continuance. The motion to dismiss relied onWyatt v. Cole, 710 F. Supp. 180 (S.D.Miss. 1989), in which the United States District Court for the Southern District of Mississippi had, on April 13, 1989 — twelve days prior to the hearing — held unconstitutional the pre-hearing seizure feature of the Mississippi replevin statute.
North American was present through counsel and objected to the two motions as being untimely. April 5 had been the (quite reasonable) deadline for filing such motions. North American represented that it had just that morning (it could have acted as early as April 6) presented the Circuit Clerk a request for entry of default, supported by the requisite affidavit for default dated April 25, 1989. North American further advised that on the same day, April 25, 1989, the Circuit Clerk had entered the default of James A. Rush, et al, see Rule 55(a), Miss.R.Civ.P., and asked the Court for judgment by default. Counsel for North American reminded one and all that April 5 had been set as the final deadline for the Rushes to answer or otherwise plead and that the Rushes had wholly made default. *Page 1208 
Notwithstanding, new counsel for the Rushes claimed James Rush had suffered an on-the-job injury, said to have been covered by North American-provided credit disability insurance and that this afforded a defense on the merits. Nothing but the bald, unverified, conclusory, hearsay assertions of counsel supports the claim.
Presented with these matters, the Circuit Court held
 that the motion to dismiss and defenses as well as the motion for a continuance comes too late.
The Court then entered judgment by default in favor of plaintiff, North American Van Lines, Inc., and against each of the three Defendants Rush, adjudging that:
 Permanent possession of the 1986 model International Harvester Tractor, Model No. COF9670, Manufacturer's Identification No. IHSRDJSROGHB12011, NAVL Unit No. 233158, be and the same is hereby granted and awarded to Plaintiff, North American Van Lines, Inc., . . . .
James A. Rush, Arthur Rush and Ruth Rush now appeal to this Court.
 III. A.
No one questions that the pre-hearing seizure features of our replevin statutes as they existed in November of 1988 were constitutionally infirm. Wyatt v. Cole, supra, so held. We accepted that view in Odom v. Raypress Corporation,601 So.2d 856 (Miss. 1992); and Underwood v. Foremost Financial ServicesCorp., 563 So.2d 1387 (Miss. 1990). The Mississippi Legislature acquiesced as well, enacting S.B. 2187, amending Section11-37-101, effective July 1, 1990. See Miss. Laws ch. 344, § 1 (1990), and our question today is how all of this affects today's case. General propositions seldom decide specific cases.
We begin with the undisputed premise that James A. Rush, as debtor, and North American Van Lines, Inc., as secured party, had entered into a security agreement which provided that, upon James Rush's default, North American could repossess the IHC tractor. The agreement further gave North American the right to enter upon James Rush's premises without benefit of legal process and take the tractor. By contract, it is undisputed that in November of 1988, North American enjoyed the right to the tractor, a right to the immediate possession of the tractor, and the right to enter the Rush premises and take possession. It took no statute to render these rights valid and enforceable.
Out of respect for orderly process and the rights of the Rushes, North American did not exercise its contractual rights and pursue self-help, but instead went to court. Process was served on Arthur Rush and Ruth Rush on November 23, 1988, and, indisputably, James Rush received legally effective process on December 13, 1988, in Michigan.[1] Rule 4(c)(5), Miss.R.Civ.P. Insofar as the record reflects, the Rushes did nothing for over three months. On March 21, 1989 — at a time when the Rushes were long since in de facto default — the Court ordered them to answer or otherwise plead by April 5, 1989, and again, the Rushes did nothing, a default we find outcome-determinative. Thereafter, on April 25, 1989, noting that the Rushes had through counsel made an eleventh hour, fifty-ninth minute motion to dismiss or for a continuance, the Court entered judgment by default.
No court favors defaults. See Official Comment to Rule 55, Miss.R.Civ.P. We have carefully crafted procedural rules[2] how defaults are taken, and we insist that those rules be observed. Rule 55(a), Miss. R.Civ.P., empowers the clerk to enter default *Page 1209 
against one who "has failed to plead or otherwise defend as provided by these rules." This has reference to the deadline for answering. The statute contemplated but five days' process. See
Miss. Code Ann. §§ 11-37-123 and -125 (Supp. 1988). The Circuit Court gave more, first until December 22, 1988, and then until April 5, 1989. No Rush appeared, answered or otherwise pleaded by this latter date, and North American made "that fact . . . to appear by affidavit. . . ." The clerk correctly entered the Rushes' default. Journey v. Long, 585 So.2d 1268, 1272 (Miss. 1991); Vining v. Mississippi State Bar, 508 So.2d 1047, 1048 (Miss. 1987).
The second stage is the application to the court for judgment on the default. Normally the plaintiff must serve upon the defendant written notice of the application "at least three days prior to the hearing." Rule 55(b), Miss.R.Civ.P.; Smith v.Everett, 483 So.2d 325, 327 (Miss. 1986). The rule is different on the day of trial.
 [J]udgment by default may be entered by the court on the day the case is set for trial without such three days' notice.
Rule 55(b), Miss.R.Civ.P.; see also, Smith v. Everett, 483 So.2d at 328.
The case at bar was set for trial on April 25, 1989. All the Rushes had been given written notice of this trial date as far back as March 21, 1989. The three days' notice rule does not apply, nor should it, for the simple reason the Rushes had (much more than their three days') notice. By no means did the rules mandate that, just because the Rushes had not answered by April 5, the Circuit Court was bound come trial time twenty days later to enter judgment by default, particularly in the face of the last minute appearance of substitute counsel. We hold, nevertheless, that the Court observed all of the procedural requisites to the entry of its judgment, and we turn now to review of the judgment.
 When a judgment by default is entered, it is treated as a conclusive and final adjudication of the issues necessary to justify the relief awarded and is given the same effect as a judgment rendered after a trial on the merits. A judgment entered pursuant to Rule 55(b) may be reviewed on appeal to the same extent as any other judgment; . . . .
Official Comment to Rule 55, Miss.R.Civ.P.
 B.
The law presents Rush[3] a threshold hurdle. April 5 came and passed, and Rush did not respond. When the dawn broke April 6, Rush awoke in default. Rush thereupon became burdened with the procedural duty to procure his release from his default before he could do anything. The Official Comment to Rule 55 obliged Rush to
 request that the default be "excused" and secure leave to answer before his responsive pleading will be recognized.
This Rush did not do. The Comment further provides:
 Once the default is established, defendant has no further standing to contest the factual allegations of plaintiff's claim for relief. If he wishes an opportunity to challenge plaintiff's right to recover, his only recourse is to show good cause for setting aside the default under Rule 55(c) and, failing that, to contest the amount of recovery.
Again, Rush showed no such "good cause" in any legally cognizable form.
 C.
Assuming without deciding enough may be found in this file that Rush is entitled to have this Court review the merits of his claim the default judgment should not have been entered, we proceed.
Our cases have settled upon three factors a trial court ought consider when deciding whether to vacate a judgment by default. These are (1) excusable neglect of the defaulting defendant, (2) presence of a meritorious defense, and (3) prejudice to the plaintiff if the default judgment is vacated. *Page 1210 See, e.g., State Highway Commission v. Hyman, 592 So.2d 952, 956 (Miss. 1991); Bailey v. Georgia Cotton Goods Co.,543 So.2d 180, 181 (Miss. 1989); Burkett v. Burkett, 537 So.2d 443, 445-47 (Miss. 1989); Pointer v. Huffman, 509 So.2d 870, 876 (Miss. 1987); Guaranty National Insurance Co. v. Pittman,501 So.2d 377, 386-89 (Miss. 1987). Our review is not de novo.
Rather, by reference to these factors we ask whether the trial court has abused its discretion.
 1.
First is the matter of the Rushes' delay and their neglect. James A. Rush had 131 days from the day he received summons and he did nothing. The Rushes have filed nothing of evidentiary value suggesting why they were unable to answer on December 22, 1988, when process was originally returnable, or any time thereafter, until April 25, 1989. We have no affidavit, no sworn testimony — nothing! What — and all — there is before us is the statement by counsel that they had hired a lawyer in Meridian, but he had to go to Laurel on April 25, and so present counsel appeared on his way to Tupelo "just to state our position." One can search this record and find no hint of an excuse in fact, and certainly not one in law, why the Rushes could not have responded timely.
 2. (a.)
Next is the matter of a defense on the merits. Here the law demands more than a mere wish and a prayer. To show a creditable defense in the present setting, a party must show facts, not conclusions, and must do so by affidavit or other sworn form of evidence. See Fine Shoe Co. v. Buckray Inc., 131 F.R.D. 58 (S.D.N.Y. 1990); Ferraro v. Kuznetz, 131 F.R.D. 414 (S.D.N.Y. 1990); Pennsylvania National Bank Trust Co. v.American Home Assurance Co., 87 F.R.D. 152 (E.D.Pa. 1980);Trueblood v. Grayson Shops of Tennessee, Inc., 32 F.R.D. 190, 196 (E.D.Va. 1963); 10 Wright, Miller Kane, Federal Practiceand Procedure § 2697, at 525-32 (2d ed. 1983); cf. Rule 56(e), Miss.R.Civ.P.
The Rushes on this appeal suggest two possibilities. Again they — and we — confront an absence of any affidavit, sworn testimony, or other cognizable proof. In his appearance before the Circuit Court on his way to Tupelo, Weir makes vague reference to the possibility that James Rush may have been injured on the job and that there may have been a claim on the credit disability policy he held in connection with his time purchase of the IHC tractor. If Rush had a defense to North American's default and repossession process, he could have filed it in this replevin action, had he acted timely. If he had a basis for a counterclaim arising out of the same transaction or occurrence, he could have filed that. See Rule 13, Miss.R.Civ.P.; Hall v. Corbin,478 So.2d 253 (Miss. 1985). Or, for that matter, he could have filed a third party complaint against a credit disability insurer who may be unwilling to respond in the premises.[4] See Rule 14, Miss.R.Civ.P. The point for the moment is that Rush has given us nothing we may credit. It would be a novel course for this Court to take counsel's vague and unverified assertions, and, if we might see some basis upon which Rush might defend, set aside the default judgment.
 (b.)
Rush's second defense is procedural. He argues that he had a defense to the replevin action because the Mississippi replevin statute, and particularly its pre-hearing seizure proviso, offended due process. He cites the Wyatt case in U.S. District Court for the Southern District of Mississippi. But even if Rush is right here, all he may gain is the right to a pre-seizure hearing with reasonable advance notice and opportunity to be heard.[5] The point for the *Page 1211 
moment is that Rush, in no way, has put before us the slightest hint that he was not in default on his note to North American. We have made clear that the sort of "defense on the merits" we require before setting aside a default judgment is, indeed, a defense on the merits and not some failure of a procedural or technical nature. Bailey v. Georgia Cotton Goods Co.,543 So.2d 180 (Miss. 1989) (refusal to set aside defense judgment in the face of claim creditor corporation was not authorized to sue in Mississippi courts but in the absence of any denial that the debt was due and owing).
Rush's claim under Wyatt is at best a claim that he has been denied due process by the seizure of his IHC tractor without a pre-seizure hearing. What he ignores is that due process claims are wholly subject to waiver, if not timely asserted. Queen v.Queen, 551 So.2d 197, 201 (Miss. 1989); Carpenter v. Allen,540 So.2d 1334, 1337 (Miss. 1989); O'Neill v. O'Neill,515 So.2d 1208, 1211-12 (Miss. 1987); Brown v. Brown,493 So.2d 961, 963 (Miss. 1986); Heft v. Maryland Racing Commission,323 Md. 257, 592 A.2d 1110 (1991); Lomax v. Comptroller of theTreasury, 88 Md. App. 50, 591 A.2d 1311 (1991); Delgado v.Martinez, 25 Conn. App. 155, 593 A.2d 518 (1991). His failure to answer within the enlarged time, the deadline of which was April 5, 1989, is an effective waiver of his due process rights in the premises.
 3.
Third is the matter of prejudice to North American should the default be vacated. The mere fact the plaintiff may have to try and prove his case does not stay the judicial hand. That is not the sort of prejudice the rule contemplates. Today's record is silent on the point of prejudice, as one would expect where the party is challenging the judgment has shown neither excuse for delay nor, in legally cognizable form, a viable defense on the merits. Nothing in this fact impedes our finding the Circuit Court's handling of this matter well within its discretion.
 IV.
In sum, we find the Rushes have offered no excuse for their neglect in failure to answer, but they have offered nothing in legally cognizable form to suggest the possibility that they have a defense on the merits. Under these circumstances, we are not about to say that the Circuit Court abused its discretion when it entered judgment in favor of North American for the immediate possession of the IHC tractor by default.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, SULLIVAN, PITTMAN and BANKS, JJ., concur.
DAN M. LEE, P.J., dissents with separate written opinion, joined by McRAE, J.
[1] James Rush hints confusedly that the nonresident process served upon him may possess some undisclosed impotence. The point need not detain us, for when he appeared on April 25, 1989, and moved to dismiss or for a continuance, without mentioning any concerns about process, James Rush waived any defense he may have had to personal jurisdiction here. Rules 12(b)(2) and (h)(1), Miss.R.Civ.P.
[2] The statute contemplates there will be defaults, but provides no details. We resort to the Mississippi Rules of Civil Procedure for that procedure. See Rule 64, Miss.R.Civ.P.; Hallv. Corbin, 478 So.2d 253, 256 (Miss. 1985); First MississippiNational Bank v. KLH Industries, Inc., 457 So.2d 1333 (Miss. 1984).
[3] From this point, we often refer to the Appellants Rush as "Rush." After all, the true party in interest is James A. Rush.
[4] Nothing the Court says today precludes Rush asserting in a separate action any rights he may have arising out of any on-the-job injury, or covered by his credit disability insurance policy.
[5] Rush makes no claim for damages. Hence, our decisions inOdom v. Raypress Corp., supra; and Underwood v. ForemostFinancial Services Corp., supra, afford him no comfort.