# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2012-IA-01876-SCT

**BB BUGGIES, INC. d/b/a BAD BOY BUGGIES
AND TEXTRON, INC.**

***v.***

**VINCENT LEON, INDIVIDUALLY, AS FATHER
AND NEXT FRIEND, AND AS ADMINISTRATOR
OF THE ESTATE OF HIS MINOR CHILD, JEAN-
AH LEON, AND MANDI LEON**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/31/2012 |
| TRIAL JUDGE: | HON. LILLIE BLACKMON SANDERS |
| COURT FROM WHICH APPEALED: | ADAMS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | LEANN W. NEALEY |
| | ROBERT A. MILLER |
| | WILLIAM P. THOMAS |
| | KYLE V. MILLER |
| ATTORNEYS FOR APPELLEES: | JIM WARREN, III |
| | J. CHADWICK MASK |
| | JACOB T. E. STUTZMAN |
| | ANTHONY A. HEIDELBERG |
| | NICHOLAS J. GREENE |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED - 07/31/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1.     The instant interlocutory appeal arises from a default judgment entered against BB

Buggies, Inc. and Textron, Inc. (the "Textron Parties").  The Textron Parties claim that the

default judgment is void and should be set aside because they did not receive proper service

of the amended complaint, they were not given notice of the default judgment, and the

plaintiffs failed to state a claim against them.  Additionally, the Textron Parties assert that the three-pronged balancing test for relief from default judgments requires that it be set aside because they have a colorable defense and the plaintiffs will not be prejudiced.  We hold that the default judgment is not void, but it should be set aside under the three-pronged test.

**Facts and Procedural History**

¶2.    In June 2011, fourteen-year-old Jean-ah Leon was seriously injured while operating a Bad Boy Buggy, an off-road vehicle used for hunting and outdoor recreation.  One year later, in June 2012, Jean-ah's parents, Vincent and Mandi Leon, filed a products liability and personal injury lawsuit in Louisiana against the owner of the Bad Boy Buggy, who was a Louisiana resident.  They also named the owner's insurer, the Textron Parties, and several other entities and individuals.  Within a few days, the Leons dismissed all parties except the vehicle owner and his insurer from the Louisiana case.

¶3.    On June 11, 2012, the Leons filed suit in Adams County, Mississippi, against the Textron Parties and the others previously named in the Louisiana suit,[1] seeking damages of "an amount not yet determined" but greater than $10,000,000.  The Leons served the complaint and summonses on the Textron Parties through their registered agents in Mississippi on July 16, 2012.  The Leons filed an amended complaint on July 25, 2012, adding claims for gross negligence and punitive damages.  The Leons did not issue new summonses to the Textron Parties with the amended complaint; instead, they sent copies of the amended complaint to the Textron Parties' headquarters by certified mail with

---

[1] The other parties are not involved in the interlocutory appeal.

accompanying letters addressed "To Whom it May Concern." The Textron Parties' attorney in the Louisiana case also requested and received a copy of the amended complaint by email.

¶4.     The Textron Parties' answer was due August 15, 2012, thirty days after they were served with the original complaint. They did not file an answer to the original complaint or the amended complaint. On August 23, 2012, the Leons sought a default judgment against the Textron Parties based on the amended complaint. An entry of default and default judgment were entered the same day. The judgment provided that damages would be determined at a subsequent hearing. Four days later, on August 27, the Textron Parties' insurance carrier learned of the default judgment and engaged counsel for the Textron Parties; the Textron Parties' attorney contacted the Leons' attorney that day. On August 31, 2012, the Textron Parties filed a motion to set aside the default judgment, a motion for leave to answer the original complaint, and a motion to dismiss the amended complaint or, in the alternative, for leave to answer the amended complaint. A few days later, the Textron Parties filed a motion to vacate or set aside the default judgment asserting that the Leons had failed to state a claim upon which relief could be granted. After a hearing, the trial court denied all the Textron Parties' motions. The Textron Parties filed the instant interlocutory appeal.

**Analysis**

¶5.     The Textron Parties claim that the trial court erred by refusing to set aside the default judgment against them. They claim that the default judgment is void and should be set aside because: the amended complaint was not properly served; the Textron Parties were not given notice of the entry of default; and the Leons failed to state a claim against the Textron Parties in the amended complaint. Additionally, the Textron Parties assert that the three-pronged

3

balancing test under Mississippi Rules of Civil Procedure 55(c) and 60(b) requires that the default judgment be set aside because the Textron Parties have a colorable defense to the lawsuit, and the Leons failed to show they would be prejudiced by allowing the Textron Parties to file an answer.

¶6.     Sufficiency of service of process is a jurisdictional issue, which is reviewed de novo. *Fletcher v. Limeco Corp.*, 996 So. 2d 773, 776 (¶ 8) (Miss. 2008). "A court must have jurisdiction, proper service of process, in order to enter a default judgment against a party. . . . Otherwise, the default judgment is void. . . . If a default judgment is void, the trial court has no discretion and must set the judgment aside." *McCain v. Dauzat*, 791 So. 2d 839, 842 (¶ 7) (Miss. 2001) (citations omitted). Once the procedural issues are satisfied, we apply an abuse of discretion standard of review to the circuit court's decision on a motion to set aside a default judgment. *American States Ins. Co. v. Rogillio*, 10 So. 3d 463, 467 (¶ 8) (Miss. 2009). Where there is reasonable doubt as to whether "a default judgment should be vacated, the doubt should be resolved in favor of opening the judgment and hearing the case on its merits." *Id.* (quoting *McCain*, 791 So. 2d at 843).

**I.   Whether the default judgment against the Textron Parties is void as a matter of law due to improper service of the amended complaint.**

¶7.     The Textron Parties assert that the Leons failed to comply with the service requirements of Rule 4 of the Mississippi Rules of Civil Procedure because they did not include summonses with the amended complaint and did not address the certified mailing to any officer or agent of the Textron Parties. The Leons contend that new summonses were not required because the service provisions of Rule 5(a) and (b)(1) control.

4

¶8. When a complaint is filed, the clerk issues a summons, and both the complaint and summons must be served on the defendant in accordance with Rule 4. Miss. R. Civ. P. 4(a)-(d). Rule 5 pertains to subsequent pleadings and provides, in pertinent part:

> **(a) Service: When Required.** Except as otherwise provided in these rules . . . every pleading subsequent to the original complaint unless the court otherwise orders because of numerous defendants . . . shall be served upon each of the parties. No service need be made on parties in default for failure to appear except that pleadings asserting new or additional claims for relief against them shall be served upon them in the manner provided in Rule 4 for service of summons. . . .
>
> **(b)(1) Service: How Made.** . . . Service upon the attorney or upon a party shall be made by delivering a copy to him; or by transmitting it to him by electronic means; or by mailing it to him at his last known address, or if no address is known, by leaving it with the clerk of the court, or by transmitting it to the clerk by electronic means. Delivery of a copy within this rule means: handing it to the attorney or to the party; or leaving it at his office with his clerk or other person in charge thereof; or, if there is no on one in charge [sic], leaving it in a conspicuous place therein; or, if the office is closed or the person to be served has no office, leaving it at his dwelling house or usual place of abode with some person of suitable age and discretion then residing therein. . . . . Service by mail is complete upon mailing.

Miss. R. Civ. P. 5(a), (b)(1). An amended complaint is a pleading. Miss. R. Civ. P. 7(a); Miss. R. Civ. P. 15(a). Because it is a pleading "subsequent to the original complaint," its service falls squarely within the scope of Rule 5 with one exception – if an amended complaint adds new or additional claims *and* the new claims are against a party who is in default, then service must be made under Rule 4. In the instant case, the Textron Parties were not in default when the Leons served their amended complaint fifteen days after the Textron Parties were properly served with the summons and original complaint, so the one exception to Rule 5(a) did not apply.

5

¶9.     The circuit court could exercise personal jurisdiction over the Textron Parties because the first complaint and summons had been properly served. "The existence of personal jurisdiction depends upon reasonable notice to the defendant." *Mansour v. Charmax Indus., Inc.*, 680 So. 2d 852, 854 (Miss. 1996) (citing *Noble v. Noble*, 502 So. 2d 317, 320 (Miss. 1987)). "The principal purpose of process is to give to the party to whom it is addressed notice of the proceeding to be defended." *Mid-South Pipeline Contractors, Inc. v. Citizens Nat'l Bank of Meridian*, 124 So. 2d 697, 700 (Miss. 1960). It is undisputed that the Leons properly served the Textron Parties with a summons and the original complaint, putting them on notice of the case proceeding against them. The Leons filed the amended complaint closely on the heels of the original in the same civil action, of which the Textron Parties had notice via service of the summons and the original complaint. The Textron Parties also received the amended complaint – they received it by mail at each company's headquarters, and it was emailed to their Louisiana attorney, who forwarded it to their insurance company. Therefore, it is undisputed that the Textron Parties had notice of the litigation.

¶10.     Whether Rule 4 or Rule 5 applies to service of an amended complaint is an issue of first impression in Mississippi. Because our rules are generally modeled after the Federal Rules of Civil Procedure, we often consider federal authority when construing similar rules. *Gray v. Gray*, 562 So. 2d 79, 82 (Miss. 1990). However, we are not bound by federal authority when interpreting our procedural rules. *Johnson v. Boydston*, 605 So. 2d 727, 731 (Miss. 1992) ("While the reasoning of the federal courts with respect to similar rules' provisions are given due regard; their authority is persuasive only.") (citations omitted). The Textron Parties cited two federal cases in support of their position: *Fluor Engineers and*

6

***Constructors, Inc. v. Southern Pacific Transportation Co.***, 753 F.2d 444 (5th Cir. 1985) and

***Anunciation v. West Capital Financial Services Corp.***, 97 F. 3d 1458 (9th Cir. 1996)

(unpublished). Both cases discuss former federal rule 5(a), which is now Rule 5(a)(2) of the

Federal Rules of Civil Procedure. The language in Federal Rule 5(a)(2) is essentially the

same as Rule 5(a) of the Mississippi Rules of Civil Procedure. Federal Rule 5(a)(2)

provides: "No service is required on a party who is in default for failing to appear. But a

pleading that asserts a new claim for relief against such a party must be served on that party

under Rule 4." Fed. R. Civ. P. 5(a)(2).

¶11. In ***Fluor Engineers***, one defendant filed a cross-claim against a second defendant and

attempted to effect service under Federal Rule 5 by hand delivering a copy of the cross-claim

to the second defendant's attorney. ***Fluor Engineers***, 753 F.2d at 447. On appeal, the

second defendant argued that, because it had not yet appeared in the action, service of the

cross-claim was insufficient unless accompanied by a summons. ***Id.*** at 449. The Fifth

Circuit Court of Appeals agreed and held that the second defendant should have been served

with a summons pursuant to Federal Rule 4. ***Id.*** Noting that Federal Rule 5(a)(2) requires

service under Federal Rule 4 when "new or additional claims for relief" are asserted against

parties in default for failure to appear, the Fifth Circuit found that: "Parties who have not yet

appeared to defend an action ought to be afforded the same notice for new or additional

claims such as the cross-claim asserted here . . . ." [2] ***Id.*** Even if the facts in ***Fluor Engineers***

---

[2] We point out that the Fifth Circuit found the matter harmless, however, because the first defendant had later re-served the second defendant with a summons and a copy of the cross claim.

were analogous to the situation in the case *sub judice*, the Fifth Circuit's holding in **Fluor Engineers** does not jibe with the plain language of Mississippi's Rule 5(a). To apply **Fluor Engineers** as the Textron Parties ask us to would effectively amend Rule 5 to require Rule 4 service not only upon defaulting parties when the complaint adds new claims, but upon all nonappearing parties, regardless of whether they already have been properly served.

¶12. In **Anunciation**, the plaintiff filed an amended complaint against the defendant *after* the defendant failed to respond to the original complaint. **Anunciation**, 97 F. 3d 1458, *1. The amended complaint was almost identical to the original complaint, but it added a new cause of action. **Id.** at *1. The plaintiff served the defendant with the amended complaint but did not serve another summons. **Id.** After the defendant failed to respond to the amended complaint, the plaintiff requested and was granted a default judgment on the amended complaint. **Id.** On appeal, the Ninth Circuit held that the district court did not have personal jurisdiction over the defendant for purposes of the amended complaint, because the "combination of Rules 4 and 5 require a summons to be served together with a copy of the amended complaint." **Id.** at *2. The situation in **Anunciation** is precisely what Rule 5 applies to – the amended complaint included a new claim *and* the defendant was in default because the time to respond to the original complaint had passed. It is undisputed that, when the Textron Parties were served with the amended complaint, they still had time to respond to the original complaint; thus, they were not in default.

¶13. Mississippi's Rule 5 clearly requires Rule 4 service of a summons with a subsequent pleading only if (1) the opposing party is in default *and* (2) the subsequent pleading contains new claims against the party in default. The Leons' amended complaint included new

8

claims, but the Textron Parties were not in default when the amended complaint was filed. Therefore, according to the language of Rule 5, service of a new summons under Rule 4 was not required. We hold that the Leons properly complied with Rule 5 of the Mississippi Rules of Civil Procedure when they filed their amended complaint, and the default judgment against the Textron Parties is not void for failure to properly serve the amended complaint.

## II. Whether the Textron Parties received insufficient notice of the entry of default against them.

¶14. Rule 55(b) of the Mississippi Rules of Civil Procedure provides, "[i]f the party against whom judgment by default is sought has appeared in the action, he (or if appearing by representative, his representative) shall be served with written notice of the application for judgment at least three days prior to the hearing of such application." Miss. R. Civ. P. 55(b). The Textron Parties claim that the default judgment should be set aside because they were not provided notice prior to the default judgment being entered. The Textron Parties admit that they had not formally appeared in the case when the amended complaint was filed. However, they claim that they had appeared for the purpose of Rule 55; thus, they were entitled to notice.

¶15. On August 6, 2012, Andy Braun, a Louisiana attorney who was representing Bad Boy Buggies in the Louisiana case, called the Leons' attorney, Jim Warren. Braun followed up with an email to Warren, which read:

> Thanks for calling me back this morning. As discussed, we were asked to represent one or more of the "Bad Boy Buggies, Inc. Defendants" in the lawsuit that was originally filed against them and others in Shreveport, Louisiana. We understand from Ken Mascagni that the Shreveport suit has been amended to take out the "Bad Boy Buggies, Inc. Defendants" and that you have filed a separate suit against them in Mississippi. Can you please

9

forward to us a copy of the lawsuit you filed (and any other information you can provide us with at this time) so that we can get instructions regarding how to proceed? That would be most helpful.

The Textron Parties argue that the email shows an intent to defend the Mississippi lawsuit, and that it satisfies the relaxed appearance requirement of Rule 55. Naturally, the Leons' position is that the email was not a sufficient appearance and that notice was not required. The trial court found in favor of the Leons on the issue, concluding that the Textron Parties had not appeared for Rule 55(b) purposes.

¶16.    For Rule 55(b) purposes, the appearance requirements are "relaxed considerably," and a formal filing in court or a court appearance is not required for one to be entitled to notice under Rule 55(b). *Rogillio*, 10 So. 3d at 475 (¶ 30); *Holmes v. Holmes*, 628 So. 2d 1361, 1363 (Miss. 1993).

> "[T]raditionally, for an action to constitute an appearance, one had to file documents in or actually physically appear before a court." *Holmes v. Holmes*, 628 So. 2d 1361, 1363 (Miss. 1993) (citations omitted). However, "those requirements have been relaxed considerably for Rule 55 purposes." *Holmes*, 628 So. 2d at 1363 (citations omitted). "Once a party has made an indicia of defense or denial of the allegations of the complaint such party is entitled to at least three days['] written notice of the application for default judgment." *Wheat v. Eakin*, 491 So. 2d 523, 525 (Miss. 1986). This Court has noted that "informal contacts between parties may constitute an appearance." *Holmes*, 628 So. 2d at 1364 (citing various cases in which written documents that were exchanged between parties or filed with the court, or conversations initiated by defendants' counsel, indicated an intent to defend the action and thus constituted an appearance).

*Rogillio*, 10 So. 3d at 475 (¶ 30). "The focus of the inquiry is on whether the non-movant has manifested to the movant a clear intent to defend the suit." *Dynasteel Corp. v. Aztec Indus., Inc.*, 611 So. 2d 977, 981 (Miss. 1992). *See also Holmes*, 628 So. 2d at 1362-65 (defendant had appeared for Rule 55(b) purposes where counsel had exchanged letters that

10

showed defendant intended to defend); ***Chassaniol v. Bank of Kilmichael***, 626 So. 2d 127, 129-32 (Miss.1993) (defendant had appeared where he filed an answer to the original complaint but not the amended complaint); ***Wheat v. Eakin***, 491 So. 2d 523, 524-26 (Miss. 1986) (pro se defendant's answer, although the form and language were less formal than customary, included a general denial of the claims against him, and he was entitled to Rule 55(b) notice); ***Tucker v. Williams***, 7 So. 3d 961, 967-68 (¶¶ 23-24) (Miss. Ct. App. 2009) (correspondence between attorneys in which defendant's attorney said defendants intended to file a counterclaim was "obviously a statement indicative of intent to defend a claim," and defendants were entitled to Rule 55(b) notice). *But see **Kumar v. Loper***, 80 So. 3d 808, 813-14 (Miss. 2012) (letter sent before case was filed and one phone call from former attorney did not constitute an appearance); ***Rogillio***, 10 So. 3d at 475-76 (¶¶ 30-36) (one phone conversation between insurance company's claims specialist and plaintiff's attorney, the content of which was disputed, did not constitute an appearance); ***Williams v. Kelly***, 872 So. 2d 783, 785-86 (¶¶ 11-14) (Miss. Ct. App. 2004) (defendant had not appeared for Rule 55(b) purposes even though he attended a deposition pursuant to a subpoena prior to being named as a party in the case, and even though his attorney attempted to contact plaintiff's attorney).

¶17.    In ***Rogillio***, a claims specialist for American States Insurance Company, spoke with Rogillio's counsel by phone. ***Rogillio***, 10 So. 3d at 476 (¶ 35). American States claimed that its claims specialist "clearly advised Rogillio's attorney that after Rogillio had served American States, American States would enter an appearance, defend this matter, and contest coverage." *Id.* Rogillio admitted that the conversation took place but disputed the exact content of the conversation, claiming that American States did not unequivocally express an

intent to defend. *Id.* After reviewing precedent cases in which the Court had considered what constituted an appearance for Rule 55(b) purposes, the Court held:

> Based on this Court's prior caselaw, we find that American States did not enter an appearance in the action when its claims specialist spoke over the telephone with Rogillio's attorney. Although an appearance need not be a formal entry of appearance or a physical presence in court, in the illustrative cases summarized above, the defendants either 1) served or sent a document to the plaintiff indicating in writing the defendant's intent to defend, 2) filed a document with the court indicating in writing the defendant's intent to defend, or 3) had counsel communicate to opposing counsel the defendant's intent to defend. Here, there is no evidence of American States informing Rogillio or the court in writing or through counsel of its intent to defend the suit. Although it argues that its claims specialist, Anderson, advised Rogillio of its intent to defend on March 15, 2007, there is no written or audio record of this phone conversation and there is no follow up confirmation letter to indicate what transpired during that conversation. American States has not shown that it made an appearance in this action such that Rogillio was required to provide at least three days' notice to American States of its application for default judgment. Accordingly, this Court concludes that the default judgment is not void for failure to comply with Rule 55(b).

*Rogillio*, 10 So. 3d at 476 (¶ 36).

¶18. In *Kumar v. Loper*, in addition to one letter sent before they filed the case, defendants' attorney had contacted plaintiffs' attorney by telephone to say that he no longer represented the defendants and that someone else might take over the case. *Kumar*, 80 So. 3d at 814 (¶ 21). The Court held that was not an appearance, writing, "That telephone call did not include indicia of defense or denial of the allegations of the complaint. It did not meet the requirements of a Rule 55(b) appearance." *Id.* The one phone call and one email between the Textron Parties' Louisiana attorney and the Leons' attorney is similar to the attorneys' telephone conversation in *Kumar*. The Textron Parties' Louisiana attorney acknowledged that the claims against his clients in the Louisiana case had been dropped, and

he asked for a copy of the Mississippi complaint so they could decide how to proceed. The Leons' attorney sent him a copy of the amended complaint, but there was no other response or communication before the time to file an answer expired.

¶19. The one phone call and one email from the Textron Parties' Louisiana attorney, who did not represent them in the Mississippi case, did not indicate a clear intent to defend and did not constitute an appearance for Rule 55(b) purposes. In the precedent cases in which the courts found that the parties had appeared for Rule 55(b) purposes, the attorneys had extended conversations, exchanged multiple letters, discussed the need for more time to answer, or the parties actually filed something with the court. Under the facts of the instant case, we hold that the Textron Parties had not appeared for Rule 55(b) purposes and were not entitled to notice.

### III. Whether the Leons failed to state a claim against the Textron Parties in the amended complaint.

¶20. The Textron Parties assert that the default judgment is void and should be set aside because the Leons failed to state a claim against them. They maintain that, because they did not actually manufacture the vehicle at issue, the only claim the Leons can have against them is based on product line successor theory.[3] The Leons' allegations related to successor

_____

[3] Under the product line successor theory, a successor corporation that manufactures the same product as its predecessor corporation can be "liable for injuries caused by defects in that product and inherit the liabilities associated with the product even if sold and manufactured by the predecessor corporation." *Huff v. Shopsmith, Inc.*, 786 So. 2d 383, 387 (¶ 10) (Miss. 2001). However, the successor company will be liable for the products of its predecessor only if the following elements are present: (1) the successor produces the same product under a similar name; (2) the successor acquired substantially all of predecessor corporation's assets, leaving only a corporate shell; (3) the successor holds itself out as a mere continuation of the predecessor; and (4) the successor benefits from the

13

liability in the amended complaint were vague and conclusory statements, saying simply that the Textron Parties were successors to Bad Boy Enterprises because they had purchased the company and now produced the off-road vehicles. Thus, the Textron Parties argue that the Leons did not satisfy the pleading standard of Rule 8 of the Mississippi Rules of Civil Procedure. The Leons respond that successor liability is not their only valid claim and that the relevant inquiry is whether they can prove any set of facts that would support their claims.

¶21.    Rule 8 requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Miss. R. Civ. P. 8(a). The purpose of Rule 8 is to put parties on notice of the claims against them. We have said that Rule 8 does not require any magic words, "it is only necessary that the pleadings provide sufficient notice to the defendant of the claims and grounds upon which relief which is sought." *Estate of Stevens v. Wetzel*, 762 So. 2d 293, 295 (¶ 11) (Miss. 2000) (quoting *Dynasteel Corp. v. Aztec Indus., Inc.*, 611 So. 2d 977, 984 (Miss. 1992)). The trial court found that the amended complaint satisfied the notice pleading requirements of Rule 8 of the Mississippi Rules of Civil Procedure. We agree. We decline to address the viability of each of the Leons' claims or whether successor liability is the only possible claim, as the Textron Parties suggest. However, we find that the amended complaint contains a sufficient statement of the facts and grounds underlying the claims and provides sufficient notice of the claims against the Textron Parties, which satisfies the liberal pleading standards of Rule 8.

---

predecessor's good will. *Id.* at 387 (¶ 12).

14

## IV. Whether the three-pronged test for setting aside a default judgment requires the default judgment to be set aside.

¶22. Although we hold that the default judgment is not void for the procedural reasons argued by the Textron Parties, requests for relief from a default judgment also should be analyzed under Rules 55(c) and 60(b). The Court has been clear that "default judgments are not favored." *McCain*, 791 So. 2d at 843 (¶ 10); *Guar. Nat'l Ins. Co. v. Pittman*, 501 So. 2d 377, 387-88 (Miss. 1987). "[T]rial courts should not be grudging in . . . vacating such judgment where showings within the rules have arguably been made." *Guar. Nat'l Ins. Co.*, 501 So. 2d at 387-88 (citing *Bell v. City of Bay St. Louis*, 467 So. 2d 657, 666 (Miss. 1985)). The Court has instructed that a trial court's discretion in deciding whether to vacate a default judgment "must be exercised in accordance with the provisions of Rules 55(c) and 60(b) as well as the supplementary criteria given validity in the decisions of this Court." *Guar. Nat'l Ins. Co.*, 501 So. 2d at 388.

¶23. According to Rule 55(c), a default judgment may be set aside "[f]or good cause shown" and in accordance with Rule 60(b). Miss. R. Civ. P. 55(c). The Court has articulated a three-pronged balancing test to apply in deciding whether to set aside a judgment pursuant to Rule 60(b): the trial court must consider "(1) the nature and legitimacy of the defendant's reasons for his default, i.e. whether the defendant has good cause for default, (2) whether the defendant in fact has a colorable defense to the merits of the claim, and (3) the nature and extent of prejudice which may be suffered by the plaintiff if the default judgment is set aside." *Rogillio*, 10 So. 3d at 468 (¶ 10) (citations omitted).

### A. Good cause for default

¶24.   The Textron Parties claim that their failure to file an answer was an unintentional mistake, but they concede that they did not have good cause for failing to answer the complaint. The trial court found that there was no good cause for the Textron Parties' failure to answer the complaint. We agree, and the factor weighs against the Textron Parties. However, lack of good cause alone will not prevent the Court from setting aside a default judgment if the other two factors weigh in favor of setting it aside. See *Am. Cable Corp. v. Trilogy Commc'n, Inc.*, 754 So. 2d 545, 556 (¶ 44) (Miss. Ct. App. 2000) ("The procedural mis-steps by American Cable, which are grounds for finding the first factor in the default analysis against them, are not sufficient by themselves to permit the upholding of the trial court's denial of the motion to set aside the default.").

### B. Colorable defense

¶25.   We have held unequivocally that "the second factor, the presence of a colorable defense, outweighs the other two, and we have encouraged trial courts to vacate a default judgment where 'the defendant has shown that he has a meritorious defense.'" *Allstate Ins. Co. v. Green*, 794 So. 2d 170, 174 (¶ 9) (Miss. 2001) (citing *Bailey v. Georgia Cotton Goods Co.*, 543 So. 2d 180, 182 (Miss. 1989)). *See also* *Flagstar Bank, FSB v. Danos*, 46 So. 3d 298, 307 (¶ 32) (Miss. 2010) ("colorable-defense prong is the most important factor") (citing *Rogillio*, 10 So. 3d at 469 (¶ 16)). Regarding a trial court's discretion in setting aside default judgments, the Court has held: "[T]he importance of litigants having a trial on the merits should always be a serious consideration by a trial judge in such matters. Thus, any error made by a trial judge should be in the direction of setting aside a default judgment and

16

proceeding with trial." *Green*, 794 So. 2d at 174 (¶ 9) (quoting *Clark v. City of Pascagoula*, 507 So. 2d 70, 77 (Miss. 1987)).

¶26.    The trial court found that the Textron Parties had colorable defenses to the claims against them, and we agree. The Textron Parties' defenses include that they did not design, manufacture, or distribute the vehicle in question, which was manufactured in 2009 by Bad Boy Enterprises. BB Buggies purchased certain assets from Bad Boy Enterprises in 2010, and they signed an asset purchase agreement, which provided that Bad Boy Enterprises retained liability for claims arising out of products it manufactured. As to the Leons' successor liability claim, the Textron Parties assert that the Leons cannot prove the elements required to subject them to liability for Bad Boy Enterprises's products, specifically, they cannot prove that Bad Boy Enterprises is a mere corporate shell.[4] Finally, the Textron Parties have the defenses of misuse and negligent operation of the vehicle. Jean-ah was only fourteen years old, but the owner's manual says the vehicle should not be operated by anyone under eighteen. The colorable defense factor weighs in favor of the Textron Parties. We have held that the colorable defense factor alone "should often be sufficient to justify vacation of a judgment entered by default." *Guar. Nat'l Ins. Co.*, 501 So. 2d at 388.

### C. Prejudice to the Leons

¶27.    The third prong of the balancing test requires consideration of the extent of prejudice, if any, that the Leons would suffer if the default judgment was set aside. The trial court

---

[4] *See supra* footnote 3.

found that a delay in the damages trial would be prejudicial to the Leons. The trial court's order included the following rationale for that conclusion:

> The [c]ourt finds that the delay in a damages trial that would result if the [d]efault [j]udgment were set aside would be prejudicial to Jean-ah Leon, who needs immediate medical treatment, therapy[,] and rehab for her serious injuries. Every day that passes prior to trial creates additional prejudice. The [c]ourt notes other prejudice to Ms. Leon, including the potential for loss of available insurance should this matter be delayed and the fact that but for the [d]efault [j]udgment she would be required to litigate against the other defendants. As things stand, with the [d]efault [j]udgment, she can prove her damages case and conclude the matter without going through additional litigation.

The Textron Plaintiffs contend that the need to litigate is not grounds for finding prejudice. We agree. We have held repeatedly that the fact that the plaintiffs would be required to litigate their case and prove their claims is not "cognizable prejudice." *Kumar*, 80 So. 3d at 816 (¶ 29) (citing *Bailey*, 543 So. 2d at 183). "The mere fact [that] the plaintiff may have to try and prove his case does not stay the judicial hand. That is not the sort of prejudice the rule contemplates." *Rush v. North American Van Lines*, 608 So. 2d 1205, 1211 (Miss. 1992). The Textron Parties correctly assert that prejudice does not result from "the loss of rights that were obtainable only by default." *In re Estates of Gates*, 876 So. 2d 1059, 1065 (¶ 18) (Miss. Ct. App. 2004).

¶28. We have recognized that the delay in resolving a claim can constitute prejudice to an injured plaintiff in cases involving sexual harassment. *Kumar*, 80 So. 3d at 816 (¶ 29). In addition, the passage of time is relevant in cases involving car accidents or other similar incidents that hinge on "witnesses' memories regarding a split second event," which fade over time. *Guar. Nat'l Ins. Co.*, 501 So. 2d at 388. We do not deny that Jean-ah has been

18

injured and needs resolution of her claims. However, her claims are not of a sensitive nature like the sexual harassment claims in *Kumar*. The instant case does involve a vehicle accident, but the defendants' alleged liability is based on their manufacturing and selling of the vehicle, not on the accident itself, as in *Guaranty National*. Further, in the instant case, the trial court lifted the stay on discovery as to all defendants while the interlocutory appeal is pending, so the parties have continued to litigate the case, and they will not start from scratch if the default judgment is set aside. That being so, the common claim in support of a finding of prejudice, that memories fade and evidence may be lost over time, is not applicable here either. In addition, the default judgment at issue provided that a trial on damages would take place at a later date. Thus, the Leons did not obtain complete resolution with the default judgment because the damages trial still has to occur.

¶29. The Leons did not file suit until a year after the accident. Then, they voluntarily dismissed most of the defendants in the Louisiana case and refiled in Mississippi. Thus, any initial delays were caused by the Leons. The Leons filed suit in Mississippi on June 11, 2012, and they served the Textron Parties a month later on July 16. The default judgment was entered on Thursday, August 23, 2012. By Monday, August 27, just four days after the default judgment was entered, the Textron Parties had learned of the default judgment and retained an attorney, who contacted the Leons' attorney that day. The Textron Parties' motion to set aside the default judgment was filed August 31, two weeks after their answer was due and only eight days after the default judgment was entered. The trial court held a hearing on October 23, 2012, and denied the motion to set aside the default judgment from

the bench. The trial court's order and opinion was entered November 1, 2012, three and a half months from the date the Textron Parties were served with the original complaint.

¶30. Less than four months from commencement of the action to resolution on the motion to set aside the default judgment – with only eight days between entry of the default judgment and the motion to set aside – is a very short amount of time compared to the time lapse in cases where we have found that the delay caused by the defendants was prejudicial to the plaintiffs. *See Kumar*, 80 So. 3d 808 (complaint filed and served December 9, 2008; default judgment entered February 24, 2009; damages awarded June 11, 2009; and motion to set aside filed June 17, 2009, four months after default judgment was entered); *Rogillio*, 10 So. 3d 463 (more than a month elapsed from date default judgment entered until motion to set aside filed, and more than fourteen months elapsed from time complaint was filed and served until motion to set aside default judgment was denied); *Stanford v. Parker*, 822 So. 2d 886 (Miss. 2002) (fourteen months from time defendants were served until resolution on motion to set aside default judgment; motion to set aside filed nearly a year after default judgment entered); *Guar. Nat'l Ins. Co.*, 501 So. 2d 377 (motion to set aside filed four months after default judgment entered; motion to set aside denied thirteen months after complaint was filed and served).

¶31. Although the Textron Parties missed the deadline for filing an answer, they acted promptly after discovering the default judgment. Regarding the trial court's reference to Jean-ah's need for immediate medical treatment, there is no evidence in the record that Jean-ah is not getting the medical treatment she needs. Further, discovery has been ongoing, which precludes claims for loss of evidence and will save the parties time if the case is

20

remanded. The trial court's primary reason for finding prejudice was that the Leons would be required to go to trial and prove their case. That alone is not a sufficient reason for a finding of prejudice. Taking all of this into consideration, we cannot find that the delay was prejudicial to the Leons.

¶32. With the outcome in the instant case, we do not, in any way, mean to undermine the principle that the duty to answer timely is of utmost importance. We emphasize that "the duty to answer must be taken seriously." *Guar. Nat'l Ins. Co.*, 501 So. 2d at 389. Litigants must understand that, "[a]t some point[,] the train must leave" the station. *Id.* However, under the facts of this case – where only two weeks elapsed from the date the answer was due to the date the motion to set aside the default judgment was filed – we cannot find prejudice to the Leons. When the trial court ruled on the motion to set aside, less than four months had passed since the litigation *commenced*. Allowing the Textron Parties to answer the complaint at that point would not have resulted in prejudice to the Leons. The trial court's decision on this prong amounted to an abuse of discretion. The instant factor weighs in favor of the Textron Parties.

¶33. Two of the three factors – colorable defense and prejudice – weigh in favor of the Textron Parties and, thus, in favor of setting aside the default judgment. Therefore, we hold that the trial court abused its discretion in failing to set aside the default judgment. The default judgment against the Textron Parties is set aside, and the case is remanded for proceedings consistent with the instant opinion.

**Conclusion**

21

¶34.    We hold that the default judgment is not void for the reasons argued by the Textron

Parties – the Leons properly served their amended complaint under Rule 5; the Textron

Parties had not appeared for Rule 55(b) purposes, so they were not entitled to notice of the

default; and the amended complaint was sufficient under Rule 8.  However, the default

judgment is set aside because the Textron Parties have a colorable defense and the Leons will

not suffer prejudice.

¶35.    **REVERSED AND REMANDED.**

   **DICKINSON, P.J., LAMAR, KITCHENS, CHANDLER, AND KING, JJ.,
CONCUR.  PIERCE, J., CONCURS IN RESULT ONLY WITH SEPARATE
WRITTEN OPINION JOINED BY WALLER, C.J., AND RANDOLPH, P.J.
WALLER, C.J., CONCURS IN PART AND IN RESULT WITHOUT SEPARATE
WRITTEN OPINION.**

   **PIERCE, JUSTICE, CONCURRING IN RESULT ONLY:**

¶36.    I agree with the majority that the default judgment in this instance should be set aside.

In my opinion, however, the judgment entered against the Textron Parties was void based on

the Leons' failure to serve their amended complaint, which added new claims for gross

negligence and punitive damages against the Textron Parties, under the service requirements

prescribed by Rule 4 of the Mississippi Rules of Civil Procedure.  Therefore, I concur in

result only.

¶37.    A party cannot avail itself of the more relaxed service standards prescribed by Rule

5 of the Mississippi Rules of Civil Procedure, with regard to amended complaints asserting

new claims, unless the defendant has made an appearance in the case.  In Mississippi, an

"appearance" for purposes of the rules is synonymous with a "general appearance."  *See, e.g.,*

***McCoy v. Watson***, 154 Miss. 307, 122 So. 368 (1929) (reiterating that where there has been

22

no valid process in the case or no "general appearance" by defendant, no jurisdiction has been acquired by the court).

¶38.    As noted by the majority, both Rule 4 and Rule 5 of the Mississippi Rules of Civil Procedure are modeled after the Federal Rules of Civil Procedure. While certainly not controlling authority for our procedural rules, federal cases and treatises speaking to and interpreting federal rules that are counterparts to our own provide persuasive authority. The leading treatise on federal practice and procedure, Wright & Miller, speaks to Federal Rule 5 as follows: "The service of paper provisions of [Federal] Rule 5 apply only to parties who have appeared. Thus it is clear that amended or supplemental pleadings must be served on parties who have not yet appeared in the action in conformity with [Federal] Rule 4." *See* 4A Charles Alan Wright & Authur R. Miller, *Federal Practice and Procedure* § 1146 (3d ed. 2002).

¶39.    As a general rule, an amended complaint supersedes the original complaint. *See, e.g.,* ***King v. Dogan***, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam) ("An amended complaint supersedes the original complaint and renders it of no legal effect.") Like the original complaint, the amended complaint also must be served upon the defendant under Rule 4 requirements, unless the defendant already has made an appearance in the case–otherwise, the court has no jurisdiction over the amended complaint.

¶40.    As the Textron Parties had not made an appearance in the case, the circuit court had no jurisdiction to enter a judgment against them on the amended complaint asserting new claims against the Textron Parties. Accordingly, I would hold that judgment is void.

**WALLER, C.J., AND RANDOLPH, P.J., JOIN THIS OPINION.**

23