# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CA-01964-COA

ROSE MARIE MONROE AND BETTY JO           APPELLANTS
WRIGHT, INDIVIDUALLY, AND FOR AND ON
BEHALF OF THE ESTATE AND WRONGFUL
DEATH BENEFICIARIES OF WILLIAM
WALLACE RAY, DECEASED

v.

ALEXANDER BLEVENS, M.D.                      APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 10/15/2013 |
| TRIAL JUDGE: | HON. DALE HARKEY |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | W. ERIC STRACENER JR. |
| | JOHN W. KITCHENS |
| | WALTER ANDREW NEELY |
| ATTORNEYS FOR APPELLEE: | STEPHEN GILES PERESICH |
| | JOHANNA MALBROUGH MCMULLAN |
| | MARY WINTER VAN SLYKE |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| TRIAL COURT DISPOSITION: | GRANTED MOTION TO DISMISS |
| DISPOSITION: | AFFIRMED: 02/02/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### EN BANC.

### FAIR, J., FOR THE COURT:

¶1.    William Wallace Ray died after Dr. Alexander Blevens allegedly failed to diagnose

his fractured hip.  The circuit court granted Blevens a mistrial after Ray's wrongful death

beneficiaries attempted to introduce expert testimony not previously disclosed on the issue

of the standard of care.  The court then granted a defense motion to "dismiss" for a failure

to meet the burden of proof on that issue.

¶2.     We conclude that the circuit court acted within its discretion in excluding the beneficiaries' expert from testifying beyond his prior disclosures. And although the circuit court left the nature of its "dismissal" ambiguous, we find that it was a summary judgment and that it was properly granted.  We affirm.

## DISCUSSION

¶3.     The dismissal followed an abortive trial where Dr. David Bomboy, whom the beneficiaries designated as an expert in medicine and orthopedics, had attempted to testify as to the standard of care and how it was breached by Dr. Blevens.  Blevens objected, arguing that the beneficiaries had failed to adequately disclose the opinion in discovery.  The trial court granted a mistrial and Blevens's subsequent "motion to dismiss" after refusing to allow the beneficiaries to supplement their discovery responses.  On appeal, the beneficiaries raise only one issue, their challenge to the order dismissing their case.

¶4.     In their principal brief on appeal, the beneficiaries present a brief, jumbled argument premised on their assumption that the trial court's order dismissing their case was a discovery sanction, punishment for the allegedly incomplete disclosures.  A review of the trial court's seven-page written opinion indicates that this is not the case.  The trial court discussed the procedural history, reviewed Dr. Bomboy's deposition and the various disclosures, and then observed that the entirety of the disclosures of Dr. Bomboy's opinion on the standard of care had consisted of conclusory statements that Dr. Blevens had violated it by failing to diagnose

2

the fractured hip. At the trial, however, Bomboy intended to testify that the standard of care required Dr. Blevens to order an x-ray based on the possibility that Ray's knee pain was actually referred pain from his hip.

¶5. The trial court did make a discovery ruling: it held that it would not allow Dr. Bomboy to testify beyond his previously disclosed opinions. But this is not the "draconian" sanction of dismissal of their case as punishment for a discovery violation, as the beneficiaries argue. Instead, the court limited Dr. Bomboy's testimony – which is merely an "extreme" sanction[1] – and then found that the beneficiaries could not meet their burden of proof to establish the standard of care and a violation thereof. Only then did the court "dismiss" the case. So we see two distinct issues on appeal: the discovery sanction and the dismissal of the case.

### 1. The Discovery Sanction

¶6. The trial court found that the beneficiaries had never disclosed Dr. Bomboy's opinion on the standard of care during the time allowed by the scheduling order, and that it would be excluded for that reason. A trial judge's decision to exclude evidence as a sanction for a discovery violation is reviewed for an abuse of discretion. *Estate of Bolden*, 17 So. 3d at 1072 (¶14). "We will affirm unless there is a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon weighing of relevant factors." *Id.* (citation and internal quotation marks omitted).

---

[1] *Estate of Bolden ex rel. Bolden v. Williams*, 17 So. 3d 1069, 1072 (¶14) (Miss. 2009).

¶7.     The trial judge found the discovery violation and then proceeded to analyze the four

factors enumerated by the Mississippi Supreme Court in *Mississippi Power & Light Co. v.*

*Lumpkin*, 725 So. 2d 721, 733-34 (¶60) (Miss. 1998), for cases where testimony of an expert

witness is excluded as a discovery sanction: "the explanation for the transgression, the

importance of the testimony, the need for time to prepare to meet the testimony and the

possibility of a continuance."  The trial judge cited *Lumpkin*, quoted the four factors, and

then analyzed the issue at some length.  Yet the beneficiaries do not employ the *Lumpkin*

framework in their arguments; instead, they deny that there was a discovery violation in the

first place.

¶8.     The standard of care is an element of a plaintiff's burden of proof in a medical

malpractice suit, and expert testimony is required to establish it.  *Hubbard v. Wansley,* 954

So. 2d 951, 956-57 (¶12) (Miss. 2007).  An expert must "identify and articulate the requisite

standard that was not complied with."  *Id.* at 957 (¶12).  The Mississippi Supreme Court has

described a standard of care as follows:

> [G]iven the circumstances of each patient, each physician has a duty to treat
> each patient[] with such reasonable diligence, skill, competence, and prudence
> as are practiced by minimally competent physicians in the same specialty or
> general field of practice throughout the United States.

*Braswell v. Stinnett*, 99 So. 3d 175, 178 (¶11) (Miss. 2012) (citation omitted).

¶9.     The beneficiaries admit, more or less, that prior to trial neither they nor Dr. Bomboy

ever expressly stated, "The standard of care is . . . ."  The closest they came was a

supplemental disclosure offered following the abortive trial, which stated in its most relevant

part:

> It is the opinion of Dr. Bomboy that the standard of care was grossly breached by Dr. Alexander Blevens. Mr. Ray presented with symptoms and a history which should have immediately alerted Dr. Blevens that a hip fracture was possible, and should have at the very least been in his differential diagnosis. To fail to include this in the differential diagnosis was a breach of the standard of care. Further, it is widely known that referred knee pain is a common symptom of a hip fracture. Dr. Bomboy will opine that diagnostic tests could have and should have been ordered by Dr. Blevens and performed immediately which would have diagnosed Mr. Ray's condition. There is absolutely no excuse for the Defendant's failure to perform a hip x-ray under these circumstances. Mr. Ray's condition could have been diagnosed, his condition treated, and he would have, in Dr. Bomboy's [opinion], obtained a positive result.

It is readily apparent that even the supplemental designation, in addition to being conclusory and generally unspecific, lacks a clear articulation of a standard of care – the fact that something "should have" been done is not equivalent to stating that it would have been done by a "minimally competent physician[] in the same specialty or general field of practice throughout the United States," nor is saying that something is "widely known" the equivalent of it being known to a minimally competent physician. *Braswell*, 99 So. 3d at 179 (¶14).[2]

¶10. Nonetheless, had the content of this supplemental designation been disclosed on time, the beneficiaries' argument that the gist of Dr. Bomboy's opinion had been communicated to Dr. Blevens prior to trial may have met more success. But the timely disclosures were in fact much more limited.

---

[2] Although Dr. Bomboy's testimony at trial was cut short, the only basis he offered for the opinion regarding referred pain was his own personal experience resolving complaints of knee pain.

¶11.    Dr. Blevens propounded the following interrogatory:

Identify fully, giving the name, address, telephone number, specialty, area of expertise, and education and training of each expert witness that the Plaintiffs or their attorneys expect to call at the trial of this case, and state the following for each such expert witness:

(a) The subject matter, in specific detail, on which each expert is expected to testify;

(b) The substance of all facts to which each expert is expected to testify;

(c) The substance of all opinions to which each expert is expected to testify; and,

(d) Give a complete summary of the grounds for each opinion to which each expert is expected to testify.

¶12.    The beneficiaries responded that they planned to designate Dr. Bomboy.  The designation followed, reading in relevant part:

It is anticipated that Dr. Bomboy will testify that the Defendants violated the standard of care in numerous respects when providing care and treatment to William Wallace Ray.

The designation was accompanied by a letter from Dr. Bomboy where he opined that Ray's hip was fractured when he fell before first going to the emergency room, and that his death was caused by a delay in diagnosing the fractured hip.  Dr. Bomboy detailed Ray's treatment history after the fall and then stated:

It is my opinion that all parties mentioned in this report failed to meet the standard of care in this case except Dr. Washington and Dr. Zayed.  This included the nursing and rehab services at both hospitals.  There is no mention in the entire medical record of bruising around Mr. Ray's left hip until documented by Dr. Washington.  The fact that the bruising was "resolving" when noted by Dr. Washington means it had been present for a minimum of

6

7-10 days.  There is no other explanation for Mr. Ray's hip fracture other than his fall at home prior to arrival at Ocean Springs Hospital.

Dr. Bomboy was later deposed and was repeatedly asked by Dr. Blevens's counsel to explain his opinion regarding the standard of care:

Q.     [T]he standard of care [– d]o you agree that that's not in this report?

. . . .

A.     It is not.

Q.     Thank you. Now, in regard to your opinion that all parties mentioned in this report failed to meet the standard of care in this case, what standard of care do you contend they failed to meet?

A.     They failed to – the failure to diagnose.  They did not diagnose Mr. Ray's fractured left hip, the – you know, and that's the crux of my opinion. The medical staff, and by that I mean the physical therapist, the nursing service, the – at least failed to identify and notify others of the bruising about Mr. Ray's hip and the fact – period.

After Blevens's counsel pressed the issue further, Dr. Bomboy replied:

Dr. Blevens did not accurately diagnose the cause of Mr. Ray's pain in his left knee and did not – and which was the fact that he had a fractured hip, and it is my opinion that his hip was fractured at that time.

Dr. Bomboy was then asked whether this was the full extent of his opinion, and he replied that it was.  He also testified:

Q.     Period, okay.  All right.  Now, you said that the standard of care that was failed to be met was failed [sic] to diagnose the fractured hip, correct?

A.     That is correct.

Q.     All right. What's the [factual] basis for you saying that these medical

7

> providers failed to diagnose Mr. Ray's fractured left hip?

> . . . .

> A.     The basis is that Mr. Ray had a fractured hip and it was not diagnosed until Dr. Washington saw him on the 28th of January and ordered an x-ray of his hip.

> Q.     Okay. All right. Is that the complete basis for your opinion?

> A.     It is.

¶13.    The beneficiaries also point to deposition testimony where Dr. Bomboy noted that bruising and complaints of hip pain were "part of his opinion" on the standard of care, without going into detail.  But Bomboy admitted that Ray had not complained of hip pain at the time Dr. Blevens saw him.  And while Dr. Bomboy emphasized that the subsequent development of bruises led him to opine that Ray had a fractured hip at the time Dr. Blevens saw him, Bomboy also conceded there was "no way to tell" if bruising had been present when Dr. Blevens saw Ray, and so he does not seem to have faulted Dr. Blevens for failing to see the bruises.

¶14.    Finally, the beneficiaries point to Dr. Bomboy's statements in the deposition expressly speaking about referred pain, but he made those statements in reference to "the duty of the emergency room physician," which was not Dr. Blevens.

¶15.    There may be some merit to the beneficiaries' arguments that they could have put Dr. Blevens on notice of Dr. Bomboy's reasons that Blevens should have considered a hip fracture as a possible diagnosis – Dr. Bomboy discussed at length the possibility of referred

pain and the degree of Ray's incapacitation as being inconsistent with the diagnosis of knee arthritis, even if he never explicitly tied this to his opinion regarding Dr. Blevens. But after thoroughly reviewing the record, we agree with the trial judge that the beneficiaries failed to timely disclose the gravamen of Dr. Bomboy's opinion, i.e., that Blevens was required to order an x-ray to satisfy the standard of care. Even the supplemental disclosures provide no explanation of why, nor do they include any discussion of the examination Dr. Blevens conducted.

¶16. The failure to disclose the basis of the opinion is especially egregious in light of the fact that Dr. Bomboy had available at the time of his deposition Ray's medical records as well as Dr. Blevens's deposition. Blevens stated he had done a manual examination of Ray's lower extremities, including the pelvis, which had been palpated to look for evidence of a hip fracture. Yet the beneficiaries still have not disclosed what Dr. Bomboy felt Dr. Blevens had done wrong – was palpitation not enough, or was it improperly done?

¶17. As the Mississippi Supreme Court has stated:

> [Mississippi Rule of Civil Procedure] 26(b)(4) requires disclosure of "facts known and opinions held by experts," and as to each proposed testifying expert, to state "the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion." This means that the substance of every fact and every opinion which supports or defends the party's claim or defense must be disclosed and set forth in meaningful information which will enable the opposing side to meet it at trial.

> Not only this, the "grounds" or basis of each opinion must be disclosed. If the expert's opinion is based upon his own experience, the answer should so state, and if based upon some other ground, the precise source should be likewise disclosed.

9

> If truth is to be attained in the trial process, it is imperative that the attorneys and experts testifying will be fully knowledgeable as to the other party's contentions and claims well in advance of trial.

*Bailey Lumber & Supply Co. v. Robinson*, 98 So. 3d 986, 997 (¶30) (Miss. 2012) (quoting *Nichols v. Tubb*, 609 So. 2d 377, 384 (Miss. 1992)). As the supreme court observed in *Nichols*, malpractice suits in particular require complete and meaningful disclosures of expert opinions. *Nichols*, 609 So. 2d at 384.

¶18. Given the paucity of disclosures despite the trial court's scheduling orders and repeated requests from Dr. Blevens, and the beneficiaries' failure to brief the four factors outlined in *Lumpkin*, we find no error in the trial court's decision limiting Dr. Blevens's testimony to his prior disclosures. *See Lumpkin*, 725 So. 2d at 733-34 (¶60).

**2. The Dismissal**

¶19. As we said, the trial court entered an order "dismissing" the suit with prejudice. It left the nature of the dismissal ambiguous. But it appears that the trial court granted a summary judgment to Dr. Blevens: the court observed that the beneficiaries could not meet their burden of proof on the standard of care issue and that it should have granted summary judgment previously.

¶20. Parties facing summary judgment are entitled to notice that they must come forward with their evidence on a given issue, and they must have an opportunity to respond. *See, e.g.*, *Byrd v. Woods*, 90 So. 3d 666, 671 (¶23) (Miss. Ct. App. 2012). Given the trial court's scheduling order and the first trial setting, there can be no doubt that the beneficiaries were

on notice that they would be required to put on proof of the standard of care and its breach by Dr. Blevens. This was the heart of their case.

¶21. The Mississippi Rules of Civil Procedure provide no express authority for a trial court to grant summary judgment on its own motion. But "[b]ecause our rules of civil procedure have been patterned after the Federal Rules of Civil Procedure, we look to authoritative constructions of the comparable federal rule for guidance in our consideration of questions presented under our rules." *Stanton & Assocs. Inc. v. Bryant Constr. Co.*, 464 So. 2d 499, 505 n.5 (Miss. 1985); *see also BB Buggies Inc. v. Leon*, 150 So. 3d 90, 96 (¶10) (Miss. 2014).

¶22. As this Court noted in *Peavey Electronics Corp. v. Baan U.S.A. Inc.*, 10 So. 3d 945, 956 (¶26) (Miss. Ct. App. 2009):

> Concerning the notice required, the Fifth Circuit has explained that "[trial] courts are widely acknowledged to possess the power to enter summary judgments sua sponte, so long as the losing party was on notice that she had to come forward with all of her evidence." *Arkwright-Boston Mfrs. Mut. Ins. Co. v. Aries Marine Corp.*, 932 F.2d 442, 445 (5th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986)).

¶23. Given that the case had come to trial once before, there can be no doubt that the beneficiaries knew they had to come forward with all of their evidence. And since we have affirmed the trial court's decision that no further evidence can be produced, a directed verdict is inevitable. We therefore can see no reason that the trial court could not grant summary judgment sua sponte, in the interest of judicial economy. We affirm the judgment.

¶24. **THE JUDGMENT OF THE CIRCUIT COURT OF JACKSON COUNTY IS**

**AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.**

**LEE, C.J., IRVING, P.J., BARNES, ISHEE AND CARLTON, JJ., CONCUR. WILSON, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. GRIFFIS, P.J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. JAMES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. GREENLEE, J., NOT PARTICIPATING.**